In re John C. KANALEY, Debtor.

Madison–Onondaga Corporation and Samuel G. Nappi, Plaintiffs,

v.

John C. Kanaley, Defendant.

Bankruptcy No. 94–B–44647(PCB).
Adversary No. 95–8047A.

United States Bankruptcy Court,
S.D. New York.

April 22, 1999.

---

James F. Selbach, Syracuse, NY, for plaintiffs.

John C. Kanaley, Syracuse, NY, pro se.

*MEMORANDUM DECISION DISMISSING ADVERSARY PROCEEDING FOR LACK OF PROSECUTION*

PRUDENCE CARTER BEATTY, Bankruptcy Judge.

This matter is before the court upon its *sua sponte* issuance of a final notice of

intent to dismiss this adversary proceeding for lack of prosecution. In the four years since this adversary proceeding was filed, the court had previously *sua sponte* issued two orders to show cause why this proceeding should not be dismissed.[1] The court finds the plaintiffs' response inadequate to the final notice and for the reasons set forth below, the court dismisses this adversary proceeding for lack of prosecution, with prejudice.

## FACTS

John C. Kanaley (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code (the "Code") on October 4, 1994. On January 4, 1995 the plaintiffs, Madison–Onandaga Corporation ("Madison") and Samuel G. Nappi ("Nappi", together with Madison, the "Plaintiffs") timely filed this adversary proceeding seeking a determination that the Debtor's obligations to them, based on a warranty of certain debts owed to Madison, were not dischargeable under Code § 523(a)(2)(A) and requested that the court fix the amount of the obligations at $1 million including interest and costs.

The Plaintiffs allege that on March 6, 1989 a promissory note in the amount of $735,000 was executed by Bernard Mahoney and Peter Deljiorno to the benefit of Madison with respect to a certain real estate investment in the Town of Onandaga, New York (the "Stoneridge Manor Project"). The Plaintiffs allege that on or about May 21, 1989 the Debtor entered into an agreement with Deljiorno and took an assignment of Deljiorno's interest in the investment and agreed to "fully warrant and undertake the payments owed by Deljiorno to Madison." Complaint at ¶¶ 6, 7. A copy of the promissory note and assignment agreement are attached to the Complaint as Exhibits A and B, respectively.

In support of their Code § 523(a)(2)(A) cause of action, the Plaintiffs allege, "upon information and belief" that at the time the Debtor entered into the transaction concerning the Stoneridge Manor Project he (i) "either did not intend to repay the plaintiffs or, given his financial circumstances, should have know [sic] that he was unable to pay the plaintiffs"; (ii) "was unable to meet his existing financial obligations as they became due; (iii) implicitly represented that he had the ability to repay the monies due under the note when, in fact he had no such ability nor any intention to repay the sums reflected in the note"; and (iv) entered into the transaction "by false pretenses, false representation, or actual fraud." Complaint at ¶¶ 7–11.

The Debtor, who appears *pro se,* filed an answer on February 9, 1995 denying the essential elements of the Complaint and asserting as an affirmative defense that he was unable to complete the transaction due to the actions of the Plaintiffs. A.P. Doc. No. 2A. The Debtor's answer stated that (i) payments he made to the Plaintiffs were not used to pay down the mortgage as intended, but were "redirected" by Nappi for Nappi's personal use; (ii) the Plaintiffs "deliberately" urged the Debtor's investment partners to invest funds which they had committed to the Stoneridge Manor Project for other projects of the Plaintiffs, thus reducing funds available for Stoneridge Manor and "making the financing of [that] project impossible"; (iii) Nappi altered a check written by the Debtor from $6,000 to $16,000 and cashed this altered check without the Debtor's permission or consent; (iv) Nappi cashed checks written by the Debtor in excess of $15,000 "after notifying the [Debtor] that the said checks had been lost and [the Debtor] replaced them" and "both sets of checks were cashed prior to the stop payment order being issued"; and (v) Nappi depos-

---

1. By order dated February 28, 1995 the Debtor was discharged from all dischargeable debts and on or about March 14, 1995 the Chapter 7 Trustee filed a report of no distribution in this case. Thus, this case remains open solely because this adversary proceeding is pending.

ited a $36,000 check drawn on the Debtor's account "while knowing full well that payment had been stopped on the check and being fully aware that it was noted on the check that it was not to be cashed." Answer at ¶ 5. The Debtor further stated that Nappi was indicted by an Onondaga County grand jury for this final action. *Id.*

The Plaintiffs did not file a response to the Debtor's affirmative defenses, some of which might be in the nature of counterclaims to which a response was required. Nor did the Plaintiffs take any action or make any motion in furtherance of the prosecution of this adversary proceeding. As a result, on May 21, 1996 this court issued, *sua sponte,* an Order to Show Cause scheduling a hearing as to why this adversary proceeding should not be dismissed for lack of timely and diligent prosecution, or in the alternative, to schedule a pretrial conference. A.P. Doc. No. 4A. A hearing was set for June 27, 1996. Service was made by the court to Plaintiffs counsel, to the Debtor at his Syracuse post office box address and to the Chapter 7 Trustee.

Plaintiffs counsel, James Selbach ("Selbach"), filed an affirmation in opposition to the Order to Show Cause stating that he thought that his clients had hired new counsel who had settled this proceeding and that the matter would be ready to be placed on the trial calendar within 180 days. He also made a motion for an examination of the Debtor under Bankruptcy Rule ("BR") 2004. A.P. Doc. No. 5A.

The Debtor filed two letters in response to the Order to Show Cause. The first, dated June 21, 1996, merely stated that he supported the dismissal of this adversary proceeding and that he would be unavailable to attend a hearing on the prescribed date. A.P. Doc. No. 6A.

The second letter, dated June 28, 1996, set forth an additional statement by Debtor in which he asserted that he and Nappi had met and spoken on the telephone on "a number of occasions since the filing of the Petition" and that Nappi "has always indicated * * * that he did not intend to continue" this adversary proceeding. The Debtor stated that subsequent to the filing of the papers in this case, Nappi offered him equity positions in various proposed real estate projects and that Nappi, in those calls and meetings, "had discussed with [the Debtor] the possibility that [the Debtor] not testify against Mr. Nappi in a particular criminal Grand Jury investigation of Mr. Nappi's business practices." The Debtor stated that Nappi "instructed his criminal defense attorney to meet with [the Debtor] for the express purpose of discussing Mr. Nappi's criminal activity and it's [sic] relation to the instant case before this Court" and that the Debtor rejected Nappi's offers. The Debtor states that he testified against Nappi before the Onondaga County Grand Jury and that Nappi "was indicted and, upon information and belief, entered a guilty plea." Throughout this period, the Debtor states that Nappi never made any reference to a change of counsel. A.P. Doc. No. 7A.

In his second letter, the Debtor also stated that he had met with Plaintiffs' counsel prior to the filing of his petition "so that [he] could avail himself of Mr. Selbach's expertise in bankruptcy law to assist [the Debtor] in the filing of his bankruptcy petition." Although the Debtor did not ultimately retain Selbach he contends that he relied on Selbach's advice and counsel and that it is therefore improper for Selbach to continue as Nappi's counsel in this proceeding. *Id.*

Neither the Plaintiffs nor Selbach filed a response addressing the statements made by the Debtor in his June 28th letter. Instead, on July 8, 1996 the Plaintiffs filed a Notice of Deposition pursuant to BR 7030 and scheduled the deposition of the Debtor for July 26, 1996. A.P. Doc. No. 8A.

This deposition never took place. The adversary docket reflects that the Plaintiffs filed no other motions or notices in

this proceeding. On May 8, 1998, two years after the court's first Show Cause Order was issued, the court issued a second Order to Show Cause scheduling another hearing as to why this adversary proceeding should not be dismissed for lack of timely and diligent prosecution. A hearing was set for June 4, 1998. None of the parties responded to this second Show Cause Order, nor did any of them appear on the prescribed date.

Having received no papers from the Plaintiffs since the July 1996 Notice of Deposition, on January 20, 1999 the court issued a final "Notice of Intent to Dismiss Adversary Proceeding" which stated that unless written objections to this Notice were filed with the court on or before February 8, 1999, this adversary proceeding would be dismissed by the court on February 10th. A.P. Doc. No. 10A.

Prompted by the court's Notice of Intent, both parties filed responsive papers on February 9, 1999. The Plaintiffs, through an affirmation of their counsel, object to the dismissal of this proceeding on the grounds that this "is a proceeding objecting to the debtor's discharge on the grounds of fraud based on certain checks that were given to the plaintiffs by the [Debtor] which were later returned unpaid based on insufficient funds." The Plaintiffs also imply that because the Debtor's mailing address is a post office box in Syracuse, New York and because the Debtor previously resided in Syracuse he does not meet the residency requirements for the Southern District of New York. Finally, the Plaintiffs state that the Debtor had informed them that he was unavailable to·be deposed in July 1996, that he did not appear on the subsequently scheduled date, that further attempts to obtain his deposition have been unsuccessful and that the Plaintiffs cannot proceed to trial until the deposition has been completed. A.P. Doc. No. 12A.

The Debtor responded to the Plaintiffs' opposition by asserting that he has maintained a postal box in Syracuse for 30 years because he "has been domiciled in many areas during that time." He states that he kept this postal box for the convenience of communication and its location in Syracuse does not indicate his actual residence and domicile. He states that throughout this case the Plaintiffs and their counsel have been able to communicate with him by corresponding to this postal box and further that although he has been available for deposition since the commencement of this action upon reasonable notice, he has never received any communication to reschedule his deposition. He further stated that he supports the dismissal of this proceeding. A.P. Doc. No. 11A. Neither the Plaintiffs nor their counsel have responded to the Debtor's statements.

## DISCUSSION

The United States Supreme Court has stated that "the authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), reh'g denied, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962); *See also Lyell Theatre Corporation v. Loews Corporation*, 682 F.2d 37, 41 (2d Cir.1982); *Lukensow v. Harley Cars of New York*, 124 F.R.D. 64, 66 (S.D.N.Y. 1989): *In re Bonfiglio*, 231 B.R. 197, 198 (Bankr.S.D.N.Y.1999). The Second Circuit has long recognized that the decision whether to dismiss a complaint for want of prosecution lies within the trial court's discretion. *Merker v. Rice*, 649 F.2d 171, 173 (2d Cir.1981); *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993); *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir.1993). *See also In re CIS Corporation*, 214 B.R. 108, 115 (Bankr.S.D.N.Y. 1997). In making such a *sua sponte* determination, bankruptcy courts rely on Fed-

eral Rule of Civil Procedure ("FRCP") 41(b).[2]

The Second Circuit has stated that a court's consideration of dismissal under FRCP 41(b) should be guided by five factors: (1) the duration of the plaintiff's failures; (2) whether the plaintiff had notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) a balancing of the need to alleviate court calendar congestion with a party's right to due process; and (5) the efficacy of lesser sanctions. *Id.* at 174; *Nita v. Connecticut Dept. of Envtl. Protection*, 16 F.3d 482, 485 (2d Cir.1994). *Merker*, 649 F.2d at 174.

In this adversary proceeding the court finds that after consideration of each of the above factors, dismissal with prejudice is warranted.

As to the first factor, the court finds that there has been a complete lack of prosecutorial effort by the Plaintiffs since they commenced this adversary proceeding over four years ago. In fact, the *only* actions taken by the Plaintiffs after the commencement of this adversary proceeding have been the direct result of this court's warnings that this proceeding could be dismissed for lack of prosecution. However, even with the court's repeated warnings, the Plaintiffs have exhibited a continuing and knowing failure to conduct even the most preliminary pretrial procedures in a minimally satisfactory manner. No credible or plausible explanation has been presented to the court as to why the Plaintiffs have failed for over two years to even attempt to reschedule the Debtor's

deposition. No affidavit based on personal knowledge has ever been filed by any officer of Madison or by Nappi responding to any of the allegations made against them by the Debtor. Nor has Selbach addressed the challenge to his ability to represent the Plaintiffs due to his prior consultation with the Debtor.

As to the second factor, both the first and second Show Cause Orders placed the Plaintiffs squarely on notice that their dilatory conduct could result in dismissal. The only reason the court did not dismiss this proceeding after the first Show Cause Order was because the Plaintiffs filed their notice scheduling the Debtor's deposition giving the appearance that they intended to move this proceeding forward. The Debtor has admitted that the July 1996 deposition had to be rescheduled at his request. However, the Debtor states that after the deposition was canceled he received no further communication from the Plaintiffs to reschedule the deposition. The Plaintiffs have put forth no affidavit as to their efforts to reschedule the deposition or to move forward with discovery. Nor have they ever notified the court that they were having trouble communicating with the Debtor. Rather, they did nothing.

Despite two warnings, no action has been forthcoming from the Plaintiffs. The final Notice of Intent gave them one last opportunity to explain to the court why this proceeding should not be dismissed. The Plaintiffs' response, again solely through a hearsay affirmation of their attorney, was comprised of (i) a mischaracterization of their Complaint as an

---

**2.** FRCP 41(b), as made applicable to adversary proceedings by BR 7041, provides that for "failure of the plaintiff to prosecute * * *, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order otherwise specifies, a dismissal under this subdivision * * * operates as an adjudication on the merits."

In addition, the bankruptcy court for this district has adopted Local Bankruptcy Rule 9020–1(a) which provides that the "[f]ailure of a party or counsel for a party to appear before the court at a conference, complete the necessary preparations, or be prepared to proceed at the time set for trail or hearing may be considered an abandonment of the adversary proceeding * * * or a failure to prosecute or defend diligently, and an appropriate order of the Court may be entered against the defaulting party with respect to wither a specific issue or the entire adversary proceeding * * *."

objection to discharge rather than as an objection to the dischargeability of their alleged claim, (ii) an assertion that they were unable move forward because they could not communicate with the Debtor through his postal box and (iii) a request for one last opportunity to secure the Debtor's deposition. The court does not find this to be an adequate response.

First, this is not a proceeding "objecting to the debtor's discharge on the grounds of fraud based on certain checks that were given by the defendant which were later returned unpaid based on insufficient funds."[3] The Complaint sets forth a proceeding objecting to the *dischargeability* of the Debtor's obligation with respect to the promissory note. The Complaint states no cause of action for an objection to discharge nor does it make any allegations regarding returned checks.

■ Throughout the course of his bankruptcy case and this proceeding, the Debtor has been contacted through his postal box by this court and by the Plaintiffs. Judging from his timely responses, the Debtor has clearly received the court's orders as well all of the papers filed by the Plaintiffs in response thereto. If the Plaintiffs believed that there was a problem corresponding with the Debtor, nothing prevented them from seeking this court's intervention in finding an appropriate means of communicating with the Debtor. They failed to do so and were adequately warned as to the possible result of their delays. The court finds the Plaintiffs' last ditch request to reschedule the Debtor's deposition to be too little too late. Because of the deterrence principle involved in a dismissal for failure to prosecute, a "plaintiff's hopelessly belated compliance should not be accorded great weight." *Lyell Theatre*, 682 F.2d at 42; *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979).

■ As to the third factor, the court finds that prejudice has resulted to the Debtor from the Plaintiffs' delays. The primary rationale underlying FRCP 41(b) is the failure of plaintiffs in their duty to process their own case diligently. *Lukensow*, 124 F.R.D. at 67. A plaintiff's duty of due diligence is imposed because of the strong policy favoring prompt disposition of cases. Prejudice to defendants may be presumed from the length of the delay. *Id.; United Merchants and Manufacturers, Inc. v. Spare Parts*, 86 B.R. 764 (S.D.N.Y.1988). See also *Lyell Theatre*, 682 F.2d at 43; *Messenger v. United States*, 231 F.2d 328, 331 (2d Cir.1956); *Charles Labs, Inc. v. Banner*, 79 F.R.D. 55 (S.D.N.Y.1978); *M & H Cosmetics v. Alfin Fragrances*, 102 F.R.D. 265 (E.D.N.Y. 1984); *In re McDowell*, 163 B.R. 509 (Bankr.N.D.Ohio 1994). In the instant proceeding, the four year delay by the Plaintiffs, one of whom has apparently been convicted for criminal conduct that arose out of wrongs done to the Debtor and others, is evidence of prejudice to the Debtor.

■ FRCP 41(b) serves not only to protect defendants but also to aid courts in keeping administrative control over their dockets and to deter other litigants from engaging in dilatory behavior. *Lukensow*, 124 F.R.D. at 67. The power to dismiss for failure to prosecute exists at least in part, "in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the * * * Courts." *Link v. Wabash*, 370 U.S. at 629–630, 82 S.Ct. 1386.

As such, the fourth factor to be considered is whether the need to alleviate court congestion is outweighed by the plaintiff's right to due process. In the instant proceeding, there can be no assertion by the Plaintiffs that the dismissal of this action denies them their right to due process and

---

**3.** Moreover, this allegation is diametrically opposed to the Debtor's unrefuted statements that Nappi, one of the Plaintiffs, was indicted and convicted for cashing certain checks against the Debtor's account.

an opportunity to be heard. The fact is that this dismissal results from the Plaintiffs' own conduct. There can be no claim by the Plaintiffs that their due process rights have been denied when there has been a complete lack of prosecutorial activity for four years.

 Moreover, the Complaint itself cannot sustain a Code § 523(a)(2)(A) cause of action.[4] Code § 523(a)(2) generally provides that debts for, among other things, extension of credit obtained by implied or actual fraud are not dischargeable. *In re Furio,* 77 F.3d 622, 624 (2d Cir.1996). Such exceptions to discharge however are narrowly construed against the objecting creditor and liberally in favor of the debtor, *id.,* an approach that implements the "fresh start" policy of the Code. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Bonnanzio,* 91 F.3d 296, 300 (2d Cir.1996). It is the objecting creditor who bears the burden of proof on each element of fraud by a preponderance of the evidence. *Grogan,* 498 U.S. at 286–87, 111 S.Ct. 654.

 Because Code § 523(a)(2)(A), which is most often used to object to the dischargeability of credit card debt, is predicated on fraudulent conduct it is governed by the pleading requirements of FRCP 9(b), as made applicable to adversary proceedings by BR 7009. FRCP 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To pass muster under FRCP 9(b), the allegations in the complaint must specify the time, place speaker and content of the alleged fraud or misrepresentation so that the defendant's intent

to defraud is evident in the complaint. *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). As such, FRCP 9(b) pleadings cannot be based on information and belief. *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). However, there is a recognized exception to this rule, that fraud may be so alleged as to facts peculiarly within the opposing parties knowledge, in which event the allegations must be accompanied by a statement of facts upon which the belief is based. *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986).

 The Complaint in this proceeding is devoid of all but general assertions of a Code § 523(a)(2)(A) violation. Although the Plaintiffs allege that the Debtor entered into transactions with the Plaintiffs "by false pretenses, false representation, or actual fraud" the Complaint does not particularize the fraud claim as to time, place, speaker and any specific fraudulent statements allegedly made. Even if the court were to assume that the allegations made by the Plaintiffs are matters within the Debtor's knowledge, the Plaintiffs have still failed to provide a statement of facts upon which their belief is founded.

 Finally, the court must assess the efficacy of other sanctions. Considering the delinquent inactivity and delay over the four year span during which this conduct persisted and the unrefuted allegations that the adversary proceeding was brought for a wrongful purpose, that is, to intimidate the Debtor into agreeing not to testify before the grand jury against Nappi, the court finds that no sanction other than dismissal with prejudice will suffice. While the court recognizes that dismissal is a "harsh" remedy, *In re CIS Corpora-*

---

4. Code § 523(a)(2)(A) provides:
 "(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt—* * *
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's * * * financial condition."

*tion,* 214 B.R. 108, 115 (Bankr.S.D.N.Y. 1997), nonetheless, the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs. *Lyell Theatre,* 682 F.2d at 42.

The Plaintiffs were warned by this court three times over the course of the four years this proceeding has been pending that dismissal would result from their inaction. However, they have made no meaningful effort to prosecute this action. Not only have they evinced indifference to the Debtor's assertions and affirmative defenses by failing to respond to *any* of them, they have not made any real effort to put forth even the most basic evidence of their case through the affidavits of competent witnesses. They have failed to offer any adequate explanation for their inability to move forward. The Debtor, on the other hand even though appearing *pro se,* has answered the Complaint and responded to the court's orders.

Given the Code's policy of strictly construing exceptions to dischargeability against an objecting creditor who has failed to meet its burden, as well as the policy of providing a fresh start to the debtor, the court finds that this adversary proceeding should be dismissed with prejudice for failure to prosecute.

A separate order has been signed.