In re Nicholas J. FURIO and Nannete Furio, Debtors.

BETHPAGE FEDERAL CREDIT UNION, Plaintiff–Appellant,

v.

Nicholas J. FURIO, Defendant–Appellee.

No. 270, Docket 95–5011.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1995.

Decided Feb. 22, 1996.

Scott A. Rosenberg, Heller & Rosenberg, P.C., Garden City, New York, for plaintiff-appellant.

Roy J. Lester, Lester & Fontanetta, P.C., Garden City, New York, for defendant-appellee.

Before: ALTIMARI, McLAUGHLIN, and PARKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Bethpage Federal Credit Union ("Bethpage"), a creditor in the instant bankruptcy case, appeals from a judgment of the district court affirming the bankruptcy court's decision, after a bench trial, that a certain debt incurred by the debtor Nicholas J. Furio ("Furio" or "debtor") is dischargeable. Bethpage contends that the debt was procured by a false credit application, and therefore is excepted from dischargeability under section 523(a)(2)(B) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(2)(B) (1994). The bankruptcy court held that the debt was not procured by fraud, because, among other things, (1) the misrepresentation by the debtor on the credit application was not material-

ly false, and (2) the debtor did not "inten[d] to deceive" the creditor by the misrepresentation when he incurred the debt. The district court affirmed the bankruptcy court's decision that the debt was dischargeable, on the ground that Furio did not intend to deceive Bethpage. For the reasons stated below, we find the bankruptcy court's conclusion that the debtor's misrepresentation was not materially false to be fully supported by the record. Accordingly, we affirm the judgment of the district court that the debt is dischargeable.

### Background

During his lunch hour on July 25, 1985, Furio went to Bethpage and applied for a $5,000 line of credit. He listed three credit card debts and a Sears department store debt on his credit application, but failed to disclose that (1) at the time, he was required to pay $140 per month in child support, and (2) he was a co-guarantor of a promissory note with the United Jersey Bank ("UJB"), which contained a potential monthly payment obligation of $240. Five days later Furio returned to Bethpage to complete his credit application. That same day, he also went to Nassau Educator's Federal Credit Union ("Nassau") and applied for a $10,000 unsecured line of credit. Furio divulged neither his child support obligation nor his pending application for a line of credit from Bethpage on the Nassau loan application.

Bethpage received a TRW credit report on Furio, which listed as one of his debts the guaranty on the UJB promissory note, but did not reveal the child support obligation. After evaluating the loan application using a debt-to-income ratio, which included Furio's potential $240 per month obligation on the guaranty, Bethpage calculated that Furio had $144 per month in disposable income and, therefore, was eligible for the $5,000 line of credit. Furio also received the $10,000 loan for which he had applied from Nassau. He used the Nassau loan to pay off the three credit card debts listed on his credit application to Bethpage, thereby reducing his total monthly debt service by approximately $140.

Furio used his Bethpage line of credit, and remained current on his balance payments. At one point in 1987 he had paid the credit line down to a zero balance; however, he subsequently ran the balance up again. In 1990, Furio lost his job as a senior systems analyst at the Grumman Corporation ("Grumman"). Despite being unemployed, he timely paid the balance on the Bethpage debt for another two years. In March of 1993, Furio and his wife filed for voluntary Chapter 7 bankruptcy protection. At the time the Furios filed their bankruptcy petition, Furio owed Bethpage $5,022 on the line of credit.

Bethpage immediately commenced an adversary proceeding, contending, among other things, that, had it known about the monthly $140 child support obligation, it would not have approved the line of credit to Furio. According to Bethpage, the debt incurred from the $5,000 line of credit it had extended to Furio (the "debt") was not dischargeable in bankruptcy under section 523(a)(2)(B), because it had been obtained by fraud. Section 523(a)(2) generally provides that debts for, among other things, extensions of credit obtained by implied or actual fraud are not dischargeable. Section 523(a)(2)(A) applies to such debts obtained by "false pretenses, a false representation, or actual fraud," but not to debts incurred by false financial statements. Section 523(a)(2)(B) covers debts obtained by false financial statements. It provides that, among other debts, an extension of credit obtained by "use of a statement in writing" is not dischargeable, if it (1) is materially false, (2) concerns the debtor's financial condition, (3) is relied upon by the creditor to whom the debtor is liable for the extension of credit, and (4) is made by the debtor "with intent to deceive." *See* 11 U.S.C. § 523(a)(2)(B); *Field v. Mans*, —— U.S. ——, —— & n. 6, 116 S.Ct. 437, 441 & n. 6, 133 L.Ed.2d 351 (1995) (setting forth the history of the Bankruptcy Code provisions governing the non-dischargeability of debts obtained by fraud, and differentiating between sections 523(a)(2)(A) and (B)).

Before the bankruptcy court, Bethpage contended that, because Furio knowingly submitted a loan application which omitted his child support obligation, he intended to deceive Bethpage in obtaining the debt. Af-

ter reviewing the totality of the evidence presented at the bench trial, the bankruptcy court concluded that, among other things, (1) Furio's omission of the child support obligation was not material, and (2) Furio did not intend to deceive Bethpage by omitting the child support obligation.

The bankruptcy court based its conclusion that the failure to list the child support obligation was not material on two factors. First, it found that because Furio used the Nassau loan to pay off the three credit card debts and thereby reduce his monthly debt service by an amount equal to the child support obligation, his debt-to-income ratio remained unchanged. As a result, the court determined that had Bethpage known about the child support obligation and the Nassau loan, it would still have approved the loan to Furio.

Second, the bankruptcy court found that in computing Furio's debt-to-income ratio, Bethpage had improperly included the potential $240 per month payment arising from Furio's guaranty of the UJB promissory note. Furio testified, without dispute, that he had never been required to make any monthly payments in connection with this loan. According to the bankruptcy court, Bethpage did not show by a preponderance of the evidence that Furio had, in fact, undertaken the monthly payments related to the guaranty. The bankruptcy court found this significant because, by excluding the UJB debt, Furio's debt-to-income ratio would have decreased, making him eligible for a larger line of credit under Bethpage's credit guidelines.

The bankruptcy court's conclusion with regard to "intent to deceive" was based on the finding that Furio had remained current on his debt repayments for seven years after obtaining the loan. In particular, the bankruptcy court emphasized the facts that Furio had paid off the entire debt in two years, and had remained current on all his balance payments for the two years after he lost his job with Grumman. In light of these facts, the bankruptcy court concluded that Bethpage had not met its burden of establishing by a preponderance of the evidence that the debt was obtained by fraud.

On appeal, the district court affirmed on the ground that Furio did not intend to deceive Bethpage by omitting the child support obligation. Bethpage now appeals the district court's determination, specifically challenging the district court's ruling that Furio did not act with an intent to deceive it.

### *Discussion*

■ This Court's review of an appeal from the bankruptcy court to the district court is plenary. We " 'independently examine the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and [reviewing *de novo* the bankruptcy court's] conclusions of law.' " *United States Lines (S.A.), Inc. v. United States (In re McLean Indus.),* 30 F.3d 385, 387 (2d Cir. 1994) (per curiam) (quoting *Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.),* 29 F.3d 88, 89 (2d Cir.1994)), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).

■ In order to be awarded an exception from discharge under section 523(a)(2), a creditor must prove each statutorily enumerated element of fraud by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); *In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995). "[O]nce a creditor establishes a *prima facie* case of fraud, the burden of coming forward with some proof or explanation of the alleged fraud shifts to the debtor." *Carini v. Matera (In re Matera),* 592 F.2d 378, 380–81 (7th Cir.1979) (*per curiam* ) (citing *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975)); *see also National Bank of North Am. v. Newmark (In re Newmark),* 20 B.R. 842, 853 (Bankr.E.D.N.Y.1982). Exceptions to dischargeability are "narrowly construed against the creditor's objections, and confined to those plainly expressed in the [Bankruptcy] Code." *Household Finance Corp. v. Howard (In re Howard),* 73 B.R. 694, 700 (Bankr.N.D.Ind.1987); *accord Household Finance Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *Newmark,* 20 B.R. at 853 (citing cases). However, " '[t]he debtor's unsupported assertions of an honest intent will not overcome

the natural inferences from admitted facts.'" *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 47 (Bankr. S.D.N.Y.1992) (quoting 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 523.10, at 523–71–72 (15th ed. 1992)).

■ On appeal, the parties focus on whether Furio's intent to deceive Bethpage can be inferred from the fact that he knowingly made a false statement on his credit application. Bethpage contends that such an inference can be drawn, thereby meeting its *prima facie* case. *See Northern Trust Co. v. Garman (In re Garman)*, 643 F.2d 1252, 1260–61 (7th Cir.1980) ("[W]here ... a person knowingly or recklessly makes a false representation which the person knows or should know, will induce another to make a loan, intent to deceive may logically be inferred."), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981); *Citizens Nat'l Bank v. Vandergrift (In re Vandergrift)*, 35 B.R. 76, 78 (Bankr.D.Md.1983) (debtor's failure to list arrears in child support payments on a loan application evinced an intent to deceive the creditor). Moreover, Bethpage contends that the bankruptcy court cannot, as a matter of law, consider post-loan application events—such as Furio's staying current on his balance payments for seven years—as an indicia of Furio's intent to deceive Bethpage.

Furio, on the other hand, contends that an inference of intent to deceive is not always warranted from the failure to list a debt on a loan application, and that each case must be assessed on the totality of its circumstances. *See Boice*, 149 B.R. at 48; *cf. Sheridan*, 57 F.3d at 634 (a finding of intent to deceive may be inferred from certain evidence, but is not compelled whenever a creditor presents circumstantial evidence of such an intent; "[w]hether to infer the requisite intent is left to the bankruptcy court that presides over the case."). In particular, Furio claims that the bankruptcy court was correct to rely on his post-application conduct as evidence that he did not intend to deceive Bethpage.

We need not, however, reach the issue of whether Furio intended to deceive Bethpage. This Court can affirm the district court's judgment affirming the bankruptcy court for reasons different than those relied upon by the district court. *See Rothberg v. Kirschenbaum (In re Beck Industs.)*, 725 F.2d 880, 892 (2d Cir.1984). We agree with the bankruptcy court that the falsehood—the omission of the child support obligation—was not "material" within the meaning of section 523(a)(2)(B)(i), and therefore affirm the district court's judgment that the debt is dischargeable on that ground.

■ A statement is materially false under section 523(a)(2)(B)(i) if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Borg Warner Cent. Envtl. Sys., Inc. v. Nance (In re Nance)*, 70 B.R. 318, 321 (Bankr.N.D.Tex.1987); *see also In re Bogstad*, 779 F.2d 370, 375 (7th Cir.1985) ("A recurring guidepost used by courts [for determining material falsity] has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition.") (citing cases); *Boice*, 149 B.R. at 45 ("The information must not only be substantially inaccurate, but it must also be information which would have affected the creditor's decision making process.").

Here, the bankruptcy court found that Bethpage incorrectly estimated Furio's debt-to-income ratio, by including the $240 potential monthly payment related to the UJB which Furio had never undertaken to pay. Had this debt not been included in the ratio, Furio would have been eligible for a larger line of credit. Significantly, had Bethpage accurately calculated Furio's liabilities, his omission of the child support payments would not have affected Bethpage's decision to extend the credit. Likewise, had Bethpage calculated Furio's debt-to-income ratio by accounting for the child support payments and the reduced monthly debt obligation resulting from Furio's paying down his three credit card balances with the Nassau line of credit, the debt-to-income ratio would not have substantively changed, and Bethpage's decision to extend the line of credit would also have been unaffected. Accordingly, Furio's omission of the child support payments was not "materially false" within the meaning of section 523(a)(2)(B)(i).

*Conclusion*

For the foregoing reasons, the judgment of the district court is affirmed.