Joel B. **WATERMAN, Appellant/Plaintiff,**

v.

Robert **HAUMAIER, Debtor and Appellee/Defendant.**

No. 97 Civ. 7728.
Adversary No. 92–7117.

United States District Court,
S.D. New York.

June 11, 1998.

sufficient postpetition income to pay for his services.

Joel B. Waterman, Mohegan Lake, NY, pro se.

Robert Haumaier, Beacon, NY, pro se.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

Before this Court for decision is an appeal by *pro se* plaintiff/creditor Joel B. Waterman from an order entered by the Honorable Jeremiah E. Berk, United States Bankruptcy Judge, in an adversary proceeding No. 92–7117 arising out of the voluntary petition filed by Robert Haumaier and his wife. An evidentiary hearing was held. By his handwritten order dated August 12, 1997 (Exhibit O, Vol. 4 of plaintiff's submissions), Judge Berk found as follows:

> Upon the conclusion of trial and receipt of post-trial submissions and pursuant to oral decision rendered from the bench this date in the within proceeding, it having been found after trial that plaintiff has failed to prove an essential element of his claim under 11 U.S.C. § 523(a)(2)(A), to wit the element of "justifiable reliance" on defen-

dant's representations, plaintiffs claim of $1.2 billion nondischargeable debt owing to him is in all respects *denied* and the complaint and amended complaint herein are accordingly *Dismissed.* So Ordered.

The record on appeal, while not complete, presents sufficient information to allow the Court to review the order appealed from.

The standard for this Court's review of the findings of fact of a bankruptcy proceeding is set forth in Bankruptcy Rule 8013. That rule states: "Findings of fact ... shall not be set aside unless clearly erroneous...." and calls for great deference to the findings of fact made by the distinguished Bankruptcy Judge. *See Gulf States Exploration Co. v. Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990). It is well established that even greater deference is afforded the conclusions of a bankruptcy court, where as here, such conclusions are based on the credibility and demeanor of witnesses. *See* Bankruptcy Rule 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"); *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Judge Berk's oral decision in the case begins at page 2859 of the trial transcript.

Familiarity with Judge Berk's oral decision is assumed on the part of the reader. As the trial court found, appellant Mr. Waterman has a genuine belief that the debtor Mr. Haumaier has an asset in the nature of intellectual property of substantial value which may, it has been alleged, "revolutionize the nuclear energy industry and provide a new source of energy for this planet."

This technology had been the subject of several written agreements and a course of dealing between the debtor and appellant going back as far as 1986. The Trustee could not market any interest in the intellectual property, which seems to be reflected in one or more patents, and abandoned such of the assets that were scheduled in the case. The bankruptcy judge concluded that whether or not the technology actually works, it "could not be marketed for bankruptcy purposes," and that at least as to the extent of the scheduled assets the Trustee actually and

properly abandoned the intellectual property. At trial, plaintiff was represented by an attorney. The Debtor appeared *pro se*. The proceedings prior to trial in the case had been extensive, accumulating more than 100 docket entries for separate papers or proceedings or motions before the trial even began. The trial itself required 17 days. Some of the days were not full days, and the trial days were not consecutive, through no fault of the court (see transcript at 2864).

The Bankruptcy Court concluded that the Trustee, Nancy Lord, had abandoned as worthless all stock interest held by the Debtor in various corporations and the Debtor's ownership in the various technologies claimed to exist, resulting in a so-called no asset case. The court found that the Debtor had spent most of his life as an inventor and over many years developed essentially five different technologies identified during trial as Systems 1, 2, 3 and 4, and a fifth technology dealing with an electric automobile. System 1 was created initially in 1988 and is also known as the Hydra–Power System or Recirculating Hydra–Power System. System 1 was not patented. System 2 was created in 1985, known as the Semi–Energizing Hydra–Power System. For this invention, no patent exists. System 3 was created in the years 1982 and 1983 and is known as the Fully Self–Energizing Hydra–Power System. No patent exists for this system. System 4 was created by Mr. Haumaier in 1977 and 1980 and known as the Hydraulic Drive Train and Energy Saver System. This system does have a U.S. Patent, No. 4005577. There is also a reference to the electric car technology noted above, and this is reflected in a U.S. Patent bearing No. 3994354.

The court found that appellant Waterman contacted Haumaier for the first time in 1977 after reading a newspaper article which discussed System 4, the Hydraulic Drive Train and Energy Saver System. Haumaier, through a corporation of his called Haumaier Automotive Energy Saver Incorporated issued authorizations to Waterman to negotiate licensing rights for System 4 with various automotive corporations, as well as the United States Government, during various periods of time. No productive results or profits accrued to either party out of this relationship. Waterman blamed this failure on Haumaier, who allegedly refused to grant waivers to allow the perspective licensees to have their experts examine the intellectual property. This first business relationship ended in 1984.

In November 1985, Haumaier contacted Waterman again to discuss the purchase of System 2, and they entered into a written agreement on July 19, 1986 (the "1986 Agreement"). It is a fair inference that this agreement was not the work product of a lawyer, although legalistic verbiage abounds in the document. The "1986 Agreement" provided for an option for Waterman's purchase of System 2 for $50 million dollars, we well as an exclusive option to purchase System 3 or any other new technology or improvement created by Haumaier if and when such technology was made available for sale.

The purpose of the agreement was to permit Waterman to engage in marketing efforts and to seek the necessary financing. Familiarity with that agreement and the factual representations made therein concerning the technology is assumed on the part of the reader. Some of specific representations in the 1986 Agreement closely approach the concept of the perpetual motion machine. Such machines are unpatentable in the United States as not useful within the meaning of 35 U.S.C. § 101—they are "impossible" in light of the First Law of Thermodynamics— the principle that energy can neither be created nor destroyed and therefore the total amount of energy in the universe remains constant. *See* Handbook of Chemistry and Physics F–76 (64th ed. Weast 1983).

As the Bankruptcy Judge noted in his decision, Haumaier was not required to reveal the technology itself, with the word *itself* underlined, unless $5 million was placed in escrow within 12 days of entering into the agreement. This never occurred, probably because Waterman was unable to convince prospective investors that the technology actually worked, in the absence of further disclosure.

In 1987, third parties DiBlasio and Trainor, not involved in this litigation, entered into an agreement with the debtor through

his newly formed corporation, HDT Power Corporation, by which $300,000 was invested by them to sell System 2. No sales resulted and the corporation was dissolved on April 30, 1989, prior to the filing of the debtor's petition.

Waterman and Haumaier entered into a separate business relationship by an agreement dated March 11, 1991 (the "1991 Agreement"), which granted Waterman the exclusive right to market products derived from U.S. Patent Nos. 3994354 and 4005577, and "any other patents which shall relate to the same technology known as the Hydra–Power System throughout the State of California." Shortly following the signing of this 1991 Agreement, Waterman discovered that at least one of the relevant patents had been assigned to Haumaier Energy Saver Incorporated.

As Judge Berk correctly noted, in order to obtain a denial of a discharge of indebtedness the creditor must show by a preponderance of the evidence that the debt was incurred by the debtor by "false pretenses, a false representation, or actual fraud." The five elements which must be proved by a preponderance of the credible evidence in order for a plaintiff to prevail under a § 522(a)(2)(A) claim are: (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) the debtor intended to make the false representation; and (4) the creditor justifiably relied on the representation, and; (5) damage resulted.

As Judge Berk found:

"Waterman claims that Haumaier induced him to negotiate, rely upon and enter into both agreements [the 1986 and 1991 agreements] to provide his services as a promoter and salesman in connection with the commercial exploitation of certain products based upon Haumaier's technology."

Judge Berk found, as a fact after a trial at which he observed the demeanor of the witnesses and was in a position to make findings as to the weight of the evidence and the credibility of witnesses that, "It is clear to me that the record could not possibly support a finding that this plaintiff justifiably relied upon the representations of Mr. Haumaier."

Thus, the justifiable reliance necessary to support the claim is not present in the record. Judge Berk considered Haumaier's representations about his inventions and technologies as "simply put, to my mind, preposterous." This Court agrees. The Bankruptcy Court found that Haumaier "expected to replace all electrical plants in the United States, estimating profits at $60 billion per hour," that he evaluated the stock of Haumaier Automotive Energy Saver Incorporated at $7.2 trillion, and claimed in writing that two stages of System 2 were many times more cost effective than any other irrigation technology. The court noted that Mr. Waterman had, in addition to being "faced with such incredible representation" had seen the "negative results" of his relationship with Haumaier for more than twenty years, notwithstanding which Mr. Waterman apparently still believes that the revolutionary technology actually exists.

The Bankruptcy Judge noted, and Mr. Waterman does not deny, that he never knew anything about the technology, never saw a demonstration of the technology's capabilities, never saw anything other than a prototype machine sitting in Haumaier's shop, and never saw anything derived from the technology. The decision of the trial judge reviews the evidence relied upon to support justifiable reliance. While the Bankruptcy Judge may have given credit to Waterman for more education and business experience than he actually possessed, the court's analysis of the evidence appears to me to be correct, and the trial record shows Mr. Waterman's reliance on speculative and preposterous representations about a miracle technology which would revolutionize the world was not and could not be justified.

Appellant must recognize the limitations on the ability of an appellate court to revise or alter the factual conclusions of a trial judge made after first hand observation of the testimony. Wholly apart from the legal limitations on the court's power, a fair reading of such of the record as was submitted by the plaintiff/appellant does suggest to this Court that the factual findings of the Bankruptcy Judge are valid and result from reasonable inferences based upon the evidence

as summarized by him in his oral opinion at the close of the trial.

The Court is not required to comment on whether the statements claimed by appellant to be perjurious should have been referred to the United States Attorney. We are concerned only with whether the Bankruptcy Court abused its discretion in allowing Haumaier to have his discharge. It did not.

Accordingly, the order appealed from is affirmed. No costs.

SO ORDERED.