**In re Paul FANELLI, Debtor.**

**Paul E. DeBuono, Plaintiff,**

v.

**Paul Fanelli, Defendant.**

**Bankruptcy No. 99–66115.
Adversary No. 00–80023A.**

United States Bankruptcy Court,
N.D. New York.

May 25, 2001.

---

Paul E. DeBuono, New Hartford, NY, pro se.

Gustave J. De Traglia, Jr., Utica, NY, for Defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Estate creditor Paul E. DeBuono ("DeBuono") commenced the instant *pro se* Adversary Proceeding against the Debtor, Paul Fanelli ("Debtor"), pursuant to Sections 523(a)(2) and (4) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") on February 14, 2000. In his adversary complaint ("Complaint"), DeBuono objects to the discharge of his claim arising from a prepetition judgment obtained against the Debtor in the Small Claims Court for the City of Utica, New York. The Debtor filed a timely answer on March 8, 2000. Following discovery, a trial was held before this Court on July 17, 2000 and October 5, 2000 in Utica, New York at which DeBuono represented himself.[1] At the close of DeBuono's proof, the

---

1. Several witnesses subpoenaed by DeBuono failed to appear for trial on July 17, 2000. After DeBuono had presented all available witnesses on July 17, 2000, the Court ad-

Debtor moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 52(c), incorporated by reference in Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7052. The parties were then afforded the opportunity to submit memoranda of law on the Debtor's motion for judgment as a matter of law. No memoranda of law were submitted and on October 26, 2000, the matter was taken under submission for decision.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A), (J), and (O).

## FACTS

DeBuono owns and operates a contracting entity that engages in the business of commercial snow removal. As part of his operations, DeBuono customarily utilizes calcium chloride during the course of snow removal. In October of 1994 the Debtor indicated to DeBuono that he had the ability to procure a large quantity of calcium chloride and offered it at a discount price to DeBuono, among others. DeBuono testified at trial that the Debtor offered to sell him a tractor-trailer load of individual bags of calcium chloride for $4,800, or $8.00 per bag. DeBuono accepted the Debtor's offer and on October 26, 1994 he paid the Debtor $1,600 cash as a down payment for the tractor-trailer load of calcium chloride. At trial, DeBuono introduced a photocopy of a receipt evidencing the down payment signed by both the Debtor and DeBuono. See Plaintiff's Exhibit 14 ("/s/ Paul Fanelli Gave to Paul Fanelli $1,600.00 cash for deposit on calcium, balance payable upon delivery C.O.D. 10–26–94 /s/ Paul E. De-Buono"). On December 7, 1994, DeBuono paid the Debtor the balance of $3,200 towards the purchase of the tractor-trailer load of calcium chloride. At trial, DeBuono introduced a carbon copy receipt, signed by the Debtor, evidencing the Debtor's receipt of the $3,200 payment. See Plaintiff's Exhibit 13 ("For calcium received from Paul DeBuono $3200.00 cash 12–7–94 /s/ P. Fanelli"). Sometime within the following week, the Debtor notified DeBuono that he was unable to procure the tractor-trailer load of calcium chloride. On December 14, 1994, the Debtor refunded DeBuono $1,500 of the purchase price already paid to the Debtor. At trial, De-Buono introduced a photocopied handwritten receipt signed by DeBuono evidencing the $1,500 refund. See Plaintiff's Exhibit 14 ("12–14–94 Paid Paul DeBuno [sic] $1,500.00 cash, down payment refunded from calcium purchase /s/ Paul E. DeBuono 12–14–94").

The Debtor had not yet refunded the balance of DeBuono's payment in May 1995 when DeBuono commenced a proceeding in the Small Claims Court for the

---

journed the trial until August 24, 2000, in order to, *inter alia*, afford DeBuono the opportunity to file motions to compel compliance with the issued subpoenas. On July 31, 2000, DeBuono filed separate motions to compel testimony and/or document production from "Jo–Ann Fanelli," "M.L. Benedetto & F. Spartano, Owner's [sic] of Shield Paving" and "Hill Electric Owner Kevin Hill" See DeBuono's Motions to Compel, filed July 31, 2000. At the August 24, 2000 hearing, De-Buono's Motions to Compel were denied since the underlying subpoenas were defective having been issued in DeBuono's own name rather than by the Clerk of the Court. The Court, once again, adjourned the trial and instructed DeBuono on the proper method of causing subpoenas to be issued pursuant to Fed.R.Civ.P. 45. At the continuation of the trial on October 5, 2000. DeBuono indicated that he did not cause the subpoenas on the aforementioned individuals to be reissued, nor did he intend to do so.

City of Utica, New York to recover the same. After a brief trial in which both parties appeared *pro se*, DeBuono was awarded a judgment on August 8, 1995, in the amount of $3,000 plus costs and interest ("city court judgment").[2] *See* Plaintiff's Exhibit 5. A partial transcript of the trial in the City of Utica Small Claims Court and a photocopy of the city court judgment were introduced into evidence at trial in the instant Proceeding. *See* Plaintiff's Exhibits 4 and 5, respectively. The city court judgment remained unsatisfied when, on November 16, 1999, the Debtor filed for protection under Chapter 7 of the Code.

In his original petition, the Debtor indicated his mailing address as 504 Oakwood Avenue, Rome, New York, a fact noted by the Court only because it sheds light on the supposed relevancy of some of the testimony presented at trial and discussed hereafter. On May 15, 2000, DeBuono filed a proof of claim in the Debtor's bankruptcy case in the amount of $4,260.50 representing the original judgment amount plus interest from the date of judgment to the petition filing date.

On February 16, 2000, DeBuono filed the instant Complaint objecting to the discharge of the city court judgment pursuant to Code § 523(a)(2) and (4). DeBuono's Complaint contains only the following two factual allegations:

> Debtor under oath at the creditors meeting falsely testified to questions submitted by creditor(s)....

> Creditor, Paul E. DeBuono on the 8th of August, 1995 was awarded judgment

from debtor in the amount of $3,000 plus interest at 5.84 percent, plus cost of $70.00 which has been unpaid and continues to be unpaid, plus additional monies owed for the pursuit of satisfying the judgment, seeks relief of such monies.

Complaint, at ¶ 3 (First Cause of Action), ¶ 1 (Second Cause of Action), respectively. DeBuono asserted at trial that he "intend[ed] to prove Mr. Fanelli has a way of lying and he also committed, I believe he committed, fraud on me back on a particular deal that we had back in [19]94 or [199]5."[3] *See* Opening Statement of DeBuono, *DeBuono v. Fanelli (In re Fanelli)*, Ch. 7 Case No. 99–66115, Adv. Pro. No. 00–80023 (Bankr.N.D.N.Y. July 17, 2000, Gerling, C.J.).

At trial, DeBuono presented several witnesses whose apparent purpose was to expose alleged fraudulent conduct by the Debtor prior to and during the administration of this bankruptcy case. To this end, DeBuono called a one Lucy Fanelli as a witness in his case-in-chief. Lucy Fanelli testified that although her husband, Paul A. Fanelli, shares the same name with the Debtor, neither she nor her husband are related to, nor are they acquainted with, the Debtor in any way. She testified that for over forty years she and her husband have resided at 504 Oakwood Street, Rome, New York, the address listed by the Debtor as his mailing address in his original petition. Lucy Fanelli testified that because the Debtor had listed her and her husband's mailing address as his own in his petition, she and her husband began

---

**2.** The total judgment amount, including costs and interest, was $3,075.84. *See* Plaintiff's Exhibit 5.

**3.** DeBuono also asserted at trial that the basis of the instant Proceeding is that "I [DeBuono] received my judgment from Mr. Fanelli in small claims court. But-for the fact that Mr.

Fanelli defrauded me that I don't think he should be able to claim..." the judgment as dischargeable. *See* Testimony of DeBuono. *DeBuono v. Fanelli (In re Fanelli)*, Ch. 7 Case No. 99–66115, Adv. Pro. No. 00–80023 (Bankr.N.D.N.Y. July 17, 2000, Gerling, C.J.).

receiving bankruptcy forms from the Debtor's attorney sometime early in the Debtor's bankruptcy case. She further testified that she had read a notice in the local newspaper indicating that Paul A. Fanelli of 504 Oakwood Street, Rome, New York had filed a bankruptcy petition, intimating that her husband was the Debtor.

Lucy Fanelli indicated that when she notified Debtor's counsel of the erroneous address, she was informed that the Debtor himself had provided 504 Oakwood Street, Rome, New York as his address to Debtor's counsel. On cross-examination by Debtor's counsel, Lucy Fanelli denied that Debtor's counsel had informed her that her and her husband's address was simply used in error, however, she did recall that Debtor's counsel indicated that an amended bankruptcy petition would be filed, removing her and her husband's address as the Debtor's address. The Court notes that on January 13, 2000, the Debtor did, in fact, file an amended petition removing the Fanellis' Rome address. While not abundantly clear, this testimony was apparently presented by DeBuono in an effort to establish that the Debtor falsified his petition in an attempt to somehow defraud creditors and/or this Court.[4]

DeBuono testified at trial that in 1994 the Debtor offered to sell him a tractor-trailer load of calcium chloride at the discount price of $8.00 per bag.[5] DeBuono asserted in his direct testimony that immediately prior to agreeing to purchase the offered tractor-trailer load of calcium chloride, the Debtor had already sold him a small quantity at the same discounted price of $8.00 per bag. DeBuono indicated at trial that the normal price for such a product was approximately $15.00 per bag. It was DeBuono's testimony that the Debtor had represented that he could sell the calcium chloride at such a discounted price because he could procure it at the discounted rate at which calcium chloride was sold to the New York state prison system. DeBuono testified that the Debtor indicated that he had an acquaintance working within the state prison system who could acquire the calcium chloride at the discounted rate on the Debtor's behalf and that the Debtor would, in turn, sell the same to DeBuono. DeBuono testified to having paid the Debtor the $1,600 and $3,200 on October 24, 1994 and December 7, 1994, respectively, as noted above.

DeBuono testified at trial that shortly after he made the December 7, 1994 payment, the Debtor indicated that he would not be able to procure the tractor-trailer load of calcium chloride after all. DeBuono alleged in his testimony that the Debtor represented that the $4,800 tendered by DeBuono would be refunded soon thereafter. On December 14, 1994 the Debtor refunded $1,500 of the purchase price paid by DeBuono. *See* Plaintiff's Exhibit 14, as noted *supra*. It was DeBuono's testimony that after the initial $1,500 refund, the

---

**4.** On direct examination by DeBuono, the Debtor indicated that he had not given his attorney 504 Oakwood Street, Rome, New York as his address and explained that the erroneous address listed in the original petition must have been the result of a clerical error resulting from several individuals by the name "Paul Fanelli" living in the same geographic region.

**5.** The Court notes that at in his direct testimony, DeBuono actually testified that the Debtor

offered the tractor-trailer load of calcium chloride "back in 1995..." *See* Testimony of DeBuono. *DeBuono v. Fanelli (In re Fanelli)*, Ch. 7 Case No. 99–66115, Adv. Pro. No. 00–80023 (Bankr.N.D.N.Y. July 17, 2000, Gerling, C.J.). Based upon the evidence and testimony presented at trial, there is no doubt that this was simply a misstatement on DeBuono's part and the events underlying the city court judgment actually took place in or around October 1994.

Debtor represented that the balance of $3,300 would be refunded when the Debtor obtained the funds from the acquaintance within the state prison system from whom the calcium chloride was originally to be procured.

The balance of DeBuono's purchase price had not been refunded when DeBuono commenced the proceeding in the City of Utica Small Claims Court in May 1995. On cross examination, DeBuono characterized his fraud claim in the following manner:

> The fraud isn't that he [Debtor] was trying to get a tractor-trailer load [of calcium chloride], it was that he told me he could get a tractor-trailer load, that he made me believe that I was ordering a tractor-trailer load [and] paying for a tractor-trailer load when, in fact, he knew he never could get a tractor-trailer load...at $8.00 a bag...

*See* Testimony of DeBuono, *DeBuono v. Fanelli (In re Fanelli)*, Ch. 7 Case No. 99–66115, Adv. Pro. No. 00–80023 (Bankr. N.D.N.Y. July 17, 2000, Gerling, C.J.). DeBuono alleged that the Debtor had previously sold him the smaller quantity of calcium chloride at $8.00 per bag and told DeBuono that he obtained it from his acquaintance in the state prison system as a way to induce DeBuono's purchase of an entire tractor-trailer load at that price. On cross-examination, DeBuono testified that he believed the original smaller quantity purchase had actually been purchased on the regular retail market from a local supplier, "Gleason Chemical," and that the Debtor never had any ability to procure an entire tractor-trailer load of calcium chloride at the discounted rate. *See id.* In this regard, DeBuono asserts, the Debtor fraudulently induced him into tendering the $4,800 purchase price with no intention of supplying the calcium chloride.

James Dean ("Dean"), a non-party witness in the city court proceeding and business and social acquaintance of DeBuono, testified in DeBuono's case-in-chief in the instant Proceeding. Dean testified that in November 1994 he purchased a quantity of calcium chloride from the Debtor for $8.00 per bag. Dean testified that at the time, $8.00 per bag was approximately one-half the market rate for that product. Dean recalled testifying in the Small Claims Court action that the Debtor had represented that he procured the calcium chloride from an acquaintance within the state prison system. Dean testified, upon recollection of his testimony in the Small Claims Court proceeding, that at the time he purchased the calcium chloride from the Debtor, the Debtor was an employee of Dean's and that the Debtor had offered Dean the tractor-trailer load of calcium chloride, but Dean opted to purchase only a small quantity. DeBuono introduced into evidence a check dated November 11, 1994 in the amount of $384 from "James Dean Enterprises" bearing Dean's signature, paid to the order of the Debtor, bearing the Debtor's indorsement, which check was presented as proof of Dean's purchase of calcium chloride from the Debtor. *See* Plaintiff's Exhibit 12.

On the objection of the Debtor and upon inquiry by the Court, DeBuono argued that the relevance of Dean's testimony to the instant Proceeding was that the Debtor allegedly sold the smaller quantity of calcium chloride to Dean at such a low price in an attempt to induce DeBuono to pay the Debtor for an entire tractor-trailer load while never intending to deliver the same. However, on cross-examination, Dean testified that the Debtor had never indicated any intent to fraudulently induce DeBuono's purchase nor any contrived motive in representing his ability to procure the tractor-trailer load of calcium chloride. To this end, Dean testified that the Debtor

never indicated to him that he intended to receive DeBuono's money without delivering the calcium chloride. Furthermore, Dean testified that he had no knowledge of why the Debtor was ultimately unable to procure the tractor-trailer load of calcium chloride.

The Debtor conceded, on direct examination by DeBuono, that he did sell a smaller quantity of calcium chloride to DeBuono and Dean, that he did represent to DeBuono that he could procure a tractor-trailer load of calcium chloride and that DeBuono had, in fact, paid the Debtor $4,800 for the purchase of a tractor-trailer load of calcium chloride from the Debtor.[6] However, the Debtor testified that DeBuono's tractor-trailer load of calcium chloride was to be procured from a company called "Clean All" in Chicago, Illinois, rather than from an employee working for the state prison system. *See* Testimony of Debtor, *DeBuono v. Fanelli (In re Fanelli)*, Ch. 7 Case No. 99–66115, Adv. Pro. No. 00–80023 (Bankr.N.D.N.Y. July 17, 2000, Gerling, C.J.). The Debtor was never examined as to the actual disposition of DeBuono's funds or how or why he was ultimately unable to consummate the transaction.

## ARGUMENTS

DeBuono asserts that the Debtor sold Dean and him a smaller quantity of calcium chloride at $8.00 per bag as a way to induce DeBuono into purchasing an entire tractor-trailer load at that price. DeBuono contends that the entire transaction was fraudulent in that the Debtor, at no time, intended to procure the tractor-trailer load of calcium chloride, rather, the Debtor allegedly intended to keep DeBuono's purchase price and never tender the calcium chloride. DeBuono asserts that the Debtor's conduct in this regard amounts to fraud, rendering the underlying city court judgment nondischargeable pursuant to Code § 523(a)(2) and (4).

The Debtor contends that his actions were not the result of any premeditated commercial fraud, as DeBuono suggests, rather, this is simply the result of his inability, at the final moments of the underlying transaction, to complete the deal. Furthermore, the Debtor contends, by way of the instant motion, that DeBuono has failed to make out a *prima facie* case entitling him to an award of nondischargeability pursuant to Code § 523(a)(2) and/or (4) and as such, judgment should be awarded against him.

## DISCUSSION

■■■ At the outset, the Court notes that it is cognizant that a *pro se* litigant is generally afforded some degree of flexibility in demonstrating validity of its claim. *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir.1998), *citing Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam* ); *Platsky v. CIA*, 953 F.2d 26, 28 (2d Cir.1991) (*per curiam* ). Indeed, a *pro se* litigant's complaint and supporting papers may be read liberally so as to raise the strongest arguments suggested therein. *Boguslavsky*, 159 F.3d at

6. In his direct examination of the Debtor, DeBuono was afforded great latitude in his questioning over numerous objections by Debtor's counsel. In this regard, DeBuono examined the Debtor in his case-in-chief at the July 17, 2000 trial phase and was allowed to recall the Debtor as a witness at the October 5, 2000 trial phase. The resulting testimony was generally irrelevant to the instant Proceeding. DeBuono's query over the two days focused mainly on discrediting the Debtor and/or impeaching his testimony using statements the Debtor had allegedly made in the Small Claims action, a meeting of creditors in the Debtor's bankruptcy case and a third unrelated and seemingly irrelevant city court action in which the Debtor was not a party but testified as a witness.

719, *quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citation omitted); *see also, Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983), and the cases cited therein. Moreover, "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth,* 710 F.2d at 95.

In the instant Proceeding, DeBuono was afforded great latitude in presenting his case before this Court. DeBuono was instructed both in open court and in chambers conferences on the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for this District as well as how to make various procedural applications. Furthermore, DeBuono was granted adjournments to and instructed how to properly subpoena and produce trial witnesses and documentary evidence. During the course of the trial, DeBuono was instructed, time and time again, on the proper use of impeachment material and given broad license in the use thereof. The Court took great pains to apprize DeBuono of his rights and responsibilities, both procedurally and substantively at various stages of this Adversary Proceeding.

### A. Fed.R.Civ.P. 52(c) Standard

■ Awarding a defendant judgment as a matter of law pursuant to Fed. R.Civ.P. 52(c) "is appropriate where the plaintiff has failed to make out a *prima facie* case or where the plaintiff has made out a *prima facie* case but the court determines that a preponderance of the evidence goes against the plaintiff's claim." *Stokes v. Perry,* 1997 WL 782131, *8 (S.D.N.Y.1997), *citing* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2573.1 (2d

ed.1994). Unlike motions for summary judgment or directed verdict, when a court considers a Fed.R.Civ.P. 52(c) motion, the nonmoving party is not entitled to any special inferences nor is the court to consider the evidence in a light most favorable to that party. *See Regency Holdings (Cayman), Inc. v. The Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.),* 216 B.R. 371, 374 (Bankr.S.D.N.Y. 1998) (citations omitted). "Instead, the court acts as both judge and jury, weighing the evidence, resolving any conflicts, and deciding where the preponderance of evidence lies." *Id.* at 374. A judgment pursuant to Fed.R.Civ.P. 52(c) "operates as a decision on the merits in favor of the moving party." *Id.; see also, Matis v. U.S.,* 236 B.R. 562, 569 (E.D.N.Y.1999)(applying same standard as *Regency Holdings (Cayman), Inc.*); *Lamarca v. U.S.,* 31 F.Supp.2d 110, 123 (E.D.N.Y.1998)(same); *Hoseman v. Weinschneider (In re Weinschneider),* 2001 WL 197886, *2 (Bankr.N.D.Ill.2001)(same).

### B. Code § 523(a)(2)(A) Cause of Action

■ Pursuant to Code § 523(a)(2)(A), a chapter 7 discharge does not discharge "a debt for money [or] services,...to the extent obtained by false pretenses, a false representation, or actual fraud." Code § 523(a)(2). "In order to be awarded an exception from discharge under section 523(a)(2), a creditor must prove each statutorily enumerated element of fraud by a preponderance of the evidence." *Bethpage Federal Credit Union v. Furio (In re Furio),* 77 F.3d 622, 624 (2d Cir. 1996). A creditor will be awarded an exception to discharge under Code § 523(a)(2)(A), if it can establish, that (1) the debtor made a representation; (2) that the debtor knew was false; (3) that the debtor intended to make the false representation; (4) that the creditor justifiably

relied on the representation, and; (5) that damage resulted. *See Waterman v. Haumaier*, 222 B.R. 40, 43 (S.D.N.Y.1998). "[O]nce a creditor establishes a *prima facie* case of fraud, the burden of coming forward with some proof or explanation of the alleged fraud shifts to the debtor." *Furio*, 77 F.3d at 624, *quoting Carini v. Matera (In re Matera)*, 592 F.2d 378, 380–381 (7th Cir.1979) (citations in *Carini* omitted)(editing in *Furio* ). It bears note, though, that a " 'debtor's unsupported assertions of. . .honest intent will not overcome the natural inferences from admitted facts.' " *Furio*, 77 F.3d at 624–625, *quoting Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 47 (Bankr.S.D.N.Y.1992)(quotation in *Boice* omitted).

■ In the instant case, it is generally not disputed that the Debtor made a representation, to wit, that he could obtain a tractor-trailer load of calcium chloride; that DeBuono justifiably relied on the representation, to wit, DeBuono's tendering of the $4,800 purchase price; and that damage resulted, to wit, the Debtor's breach and the resulting city court judgment. Thus, DeBuono has established, inasmuch as the Debtor has conceded, by a preponderance of the evidence, three of the five requisite elements of nondischargeability pursuant to Code § 523(a)(2)(A). However, it is DeBuono's failure to establish elements (2) and (3), namely that the Debtor knew he could not procure a tractor-trailer load of calcium chloride or that the Debtor intended to falsely represent that he could procure a tractor-trailer load of calcium chloride that sounds the death knell to DeBuono's Code § 523(a)(2)(A) cause of action. By failing to present the Court with a scintilla of evidence relating to the Debtor's alleged fraudulent conduct beyond his *ipse dixit* assertions as to the Debtor's penchant for untruthfulness, De-

Buono has failed to meet his burden and has fallen short of establishing the requisite elements of a *prima facie* cause of action under Code § 523(a)(2)(A).

## C. Code § 523(a)(2)(B) Cause of Action

■ Code § 523(a)(2)(B), much akin to § 523(a)(2)(A), excepts from a debtor's chapter 7 discharge those debts procured through the use of a written statement "(i) that is materially false; (ii) respecting the debtor's. . .financial condition; (iii) on which the creditor to whom the debtor is liable. . .reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . ." Code § 523(a)(2)(B). As in the case with Code § 523(a)(2)(A), each statutorily enumerated element must be proven by a preponderance of the evidence in order for a movant to be awarded an exception from discharge under Code § 523(a)(2)(B). *Furio*, 77 F.3d. at 624.

In the instant proceeding, DeBuono has not pled, there has been no testimony regarding nor has there been the production of, any written statement that could be construed as that which is contemplated under Code § 523(a)(2)(B). The Court need not discuss DeBuono's Code § 523(a)(2)(B) cause of action any further except to conclude that it will be denied.

## D. Code § 523(a)(4) Cause of Action

■ Pursuant to Code § 523(a)(4), "[a] discharge under [Code] section 727. . .does not discharge an individual debtor from any debt. . .for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Code § 523(a)(4). In seeking an award of nondischargeability pursuant to Code § 524(a)(4), the moving creditor "must establish the elements of each cause of action by a preponderance of the evidence." *Siddell*, 191 B.R. at 551, *citing In re Wolfson*, 139 B.R. 279, 285

(Bankr.S.D.N.Y.1992), *citing Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### 1. Fraud by a Fiduciary

A court need only reach the question of whether fraud or defalcation exists after it has determined, as a threshold matter, that the debtor acted in a fiduciary capacity at the time the debt was incurred. *See The Andy Warhol Foundation for the Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 170 (2d Cir.1999); *Siddell,* 191 B.R. at 551. "The requirements for a determination that a debtor acted in a fiduciary capacity under Section 523(a)(4) are (1) a continuing relationship of trust existing prior to and irrespective of any particular act of wrongdoing, (2) a trust *res* or property with respect to which the party to be charged is accountable to others and [7] (3) characteristically fiduciary duties *over and above the obligations inherent in an ordinary, arm's length commercial relationship,* whether such duties are created by contract, common law or statute." *Zohlman v. Zoldan (In re Zoldan),* 221 B.R. 79, 87 (Bankr.S.D.N.Y. 1998) (emphasis added). More specifically, who may qualify as a fiduciary under Code § 523 is narrowly construed and does not "reach the commercial debtor-creditor transactions in which the debtor merely violated the terms of his agreement with the creditor." *Siddell,* 191 B.R. at 551 (citations and internal quotations omitted).

In the instant case, DeBuono has not even alleged, much less presented any physical evidence, that he and the Debtor had engaged in anything other than a typical commercial transaction. Nothing alleged by DeBuono would lead this Court to the conclusion that the transaction gave rise to any form of fiduciary relationship between the two. As such, DeBuono has failed to meet his burden of proof with regard to his cause of action for fraud or defalcation while acting in a fiduciary capacity.

### 2. Non–Fiduciary Fraud

"Embezzlement has been defined as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Siddell,* 191 B.R. at 552, *quoting In re Goux,* 72 B.R. 355, 359 (Bankr.N.D.N.Y.1987), *quoting Moore v. U.S.,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); *see also, In re Kressner,* 155 B.R. 68, 72–74 (Bankr. S.D.N.Y.1993)(same). Larceny, as distinguished from embezzlement, involves the "*wrongful* taking or carrying away of the property of another with intent to convert such property to his use without the consent of the owner." *Siddell,* 191 B.R. at 552, *quoting In re Langworthy,* 121 B.R. 903, 907 (Bankr.M.D.Fla.1990)(emphasis in *Siddell*). The characteristic distinguishing larceny from embezzlement is only that the original larcenous taking is unlawful. *See Siddell,* 191 B.R. at 552, *citing In re Dempster,* 182 B.R. 790, 802 (Bankr. N.D.Ill.1995). In order to establish a cause of action for either embezzlement or larceny, the moving creditor must demonstrate that the debtor used the subject proceeds for their own benefit and did so with fraudulent intent. *See Siddell,* 191 B.R. at 552 (citations omitted); *see also, In re Kressner,* 155 B.R. at 74 ("To establishment [*sic*] embezzlement for non-dischargeability purposes, the claimant must

---

7. "The type of trust which will give rise to a fiduciary relationship under Section 523(a)(4) is limited by case law to 'express' or 'technical' trusts, and excludes trusts which may be implied by law or created by statute on the basis of wrongful conduct (*ex maleficio*)." *Zohlman,* 221 B.R. at 87.

show that the debtor misappropriated funds for his own purpose and that he did so with a fraudulent intent or deceit."); *Chemical Bank v. Marcou (In re Marcou)*, 209 B.R. 287, 293 (Bankr.E.D.N.Y. 1997)(To sustain larceny as basis for non-dischargeability "[t]he creditor must show that the debtor wrongfully took property from it with fraudulent intent.").

██ In the instant Proceeding, DeBuono willingly tendered $4,800 to the Debtor in anticipation of the Debtor procuring a tractor-trailer load of calcium chloride. For reasons not explicitly clear, the Debtor was unable keep his end of the bargain. From the facts, testimony and documentary evidence presented prior to and at trial, the Court cannot simply presume that the Debtor's inability to procure the calcium chloride and subsequent inability to obtain and or return the balance of DeBuono's purchase price was an act of embezzlement or larceny. Because the Court is not so inclined, DeBuono's Code § 524(a)(4) cause of action will similarly be denied.

### D.  Treble Damages

██ Finally, in his complaint, DeBuono "asks for treble damages under CPLR section 1312 of the Uniform City Court Act." Complaint, at ¶ 2 (Second Cause of Action). This anomalous statement eludes legal basis. Section 1312 of the New York State Civil Practice Laws and Rules ("N.Y.C.P.L.R."), is the general New York State provisional remedies provision and does not contain any cause for awarding treble damages on an existing small claims judgment. Alternatively, there simply exists no "section 1312 of the [New York] Uniform City Court Act." *Id.; see* N.Y. Uniform City Court Act, Art. 13, §§ 1301, *et seq.* While DeBuono made no attempt

at trial to substantiate any claim for treble damage, the Court notes that on the copy of the city court judgment introduced at trial, the section titled "Information for the Judgment Creditor" contains a provision, circled in blue ballpoint pen, that states, "[A] judgment creditor may be entitled to utilize... an action against the judgment debtor where that debtor is a business, for three times the amount: of an unsatisfied judgment and attorney's fees where there are two other unsatisfied small claims judgments against the judgment debtor..." Plaintiff's Exhibit 5. It is presumed that DeBuono placed his reliance on this provision in seeking treble damages in the instant Proceeding, however, no evidence or testimony was presented regarding this cause of action.[8] The Court notes that while it is obligated to hold DeBuono to a more relaxed procedural standard in his capacity as *pro se* litigant, the Court will not ferret out arguments on his behalf and seek to substantiate them in law when no attempt is made to do so by the litigant.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 52(c), incorporated by reference in Fed.R.Bankr.P. 7052 is granted and DeBuono's complaint is dismissed in its entirety.

██

---

8.  In this regard the Court notes that upon inspection of the city court judgment, it appears as though the judgment was entered against the Debtor, personally, rather than against a business entity.