**John T. LIGHTNER and Linda Lightner, Appellants,**

v.

**Kenneth LOHN, Appellee.**

**No. 8:01–CV–1030–T–17EAJ.**

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 21, 2002.

---

**11.** *Id.*

Donald J. Schutz, Schutz & Schutz, St. Petersburg, FL, for appellants.

Peter John Mackey, Dianne L. Hall, Mackey, Mackey, Hall & Goethe, Bradenton, FL, for appellee.

### *ORDER*

KOVACHEVICH, Chief Judge.

This cause is before the Court on the appeal of the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Memorandum Opinion, and from the Final Judgment. Appellants filed an initial brief and a reply brief. (Docket No. 5 & 8) Appellee filed a brief. (Docket No. 7)

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

John and Linda Lightner, the Debtors, were owners of a used car business located in Bradenton, Florida. Much of the Lightners' business consisted of purchasing cars from Dealer Leasing and Sales (Dealer Leasing), an automobile wholesaler in St. Petersburg. As early as September 1995, the Lightners began to receive "bad checks" from Dealer Leasing. It was also in late 1995 that Mr. Lohn approached the Lightners and expressed interest in providing financing for the purchasing of inventory. On January 7, 1996, the Lightners signed an agreement that read:

Lightner Motors agrees to pay Kenneth J. Lohn 12% on monies borrowed from him calculated by multiplying the loan by .12 and dividing that product by 365 and paying that daily sum for each day or part of a day the money is used and also agrees that all loans will be repaid on or before 90 days from the date of the loan as shown on the check for that loan.

This agreement resulted in Lohn providing checks to the Lightners, for the price of individual cars, in order to finance the purchase of specific vehicles. In exchange, Lohn would receive the title to the corresponding vehicle. These titles were never formalized with the Department of Motor Vehicles. When the car was later sold, the Lightners would pay Lohn the amount of the specific loan plus the interest pursuant to the original agreement. After payment, Lohn would return the titles to the Lightners. This process continued for approximately six months.

Between June 1995 and June 1996, the Lightners continued to experience problems with Dealer Leasing. In total, the Lightners received approximately $750,000.00 worth of "bad checks" from Dealer Leasing. Because of the problem with Dealer Leasing, the Lightners also began writing "bad checks."

In early June 1996, the parties' business relationship changed. The Lightners proposed to streamline the process by which Lohn financed the vehicles. On June 27, 1996, the Lightners signed a promissory note that stated:

This is to acknowledge receipt of One Hundred and Fifty Thousand and no/100 dollars ($150,000.00) from Kenneth J. Lohn which is to be repaid to him upon demand. This loan is to be secured by providing Mr. Lohn with fully executed title reassignment supplements listing Kenneth J. Lohn as the buyer of vehicles with a total wholesale value of One Hundred and Sixty Thousand and no/100 dollars ($160,000.00), such values to be determined by the amount paid for the vehicles at auction or, if a trade-in or outright purchase, at the value shown in the current wholesale buying guide. Mr. Lohn may at any time demand immediate delivery of the titles to the vehicles represented by the above mentioned title reassignment supplements. Mr. Lohn is to be informed when vehicles are sold in order that the title reassignment supplement for that vehicle can be traded for a new title reassignment sup-

plement that maintains the value of the security at $160,000.00.

Mr. Lohn ultimately exchanged the titles he was holding for title reassignment supplements (Rainbows). Rainbows are forms developed by the State of Florida Division of Motor Vehicles. The authorized uses of Rainbows are listed on the back of the form. Rainbows must be used when a licensed Motor Vehicle Dealer is using one of the following types of proof-of-ownership documents: 1) a manufacturer's Certificate of Origin, 2) A Certificate of Title or other proof-of-ownership issued by a state other than Florida, 3) A Florida Certificate of Title issued before April 29, 1990, if no odometer reading is shown or if additional reassignment spaces are needed, or 4) a Florida Certificate of Title issued on or after April 29, 1990 if all reassignment spaces on the reverse side have been used. Each Rainbow Lohn received had a numeric "stock number" identifying the vehicle to which it related. When a vehicle, which Lohn held a Rainbow to, was sold, the Lightners would replace the Rainbow with a new one of equal value. Additionally, the Lightners continued to make monthly payments that represented the 12% interest rate, but did not pay any of the principle. This payment system continued until August 1997, when the Lightners failed to pay the monthly interest payment. Lohn first demanded repayment of the $150,000.00 inventory loan, and then commenced taking steps to take possession of the vehicles identified in the Rainbows. At that point, the Lightners had already sold all the vehicles identified in the Rainbows.

The Lightners petitioned for bankruptcy on April 1, 1998. In response, Kenneth Lohn filed a Verified Complaint to Determine Nondischargability of Debt. The Bankruptcy Court found that the debt was nondischargable pursuant to § 523(a)(2)(A) of the Bankruptcy Code because of false representations made by the Lightners. The Bankruptcy Court entered findings that the Lightners had represented to Lohn that Rainbows were an effective substitute for vehicle certificates of title, which had previously secured his loan, and that the Lightners knew the representation was false and intended to deceive Mr. Lohn with the statement. In the bankruptcy proceeding the Lightners admitted that they did not think that Rainbows acted as a sufficient substitute for the actual title, and that Rainbows did not secure a loan. The Bankruptcy Court also found that Mr. Lohn had justifiably relied on the representation, and sustained a loss as a proximate result of the misrepresentation.

## JURISDICTION

Jurisdiction over appeals from the final judgment, orders and decrees of the Bankruptcy Court is vested in the Federal District Courts. 28 U.S.C. § 158.

## STANDARD OF REVIEW

■■■ This Court functions as an appellate court in reviewing a bankruptcy decision. 28 U.S.C. § 158. This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard of review. *See In re Patterson,* 967 F.2d 505, 508 (11th Cir.1992) (citing *In re Club Assocs.,* 951 F.2d 1223, 1228 (11th Cir. 1992)). The Bankruptcy Court's conclusions of law are reviewed under the *de novo* standard of review. *See In re Patterson,* 967 F.2d 505. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See United States v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Further, appellants are entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to

the facts. *See In re Noll,* 249 B.R. 568, 569 (M.D.Fla.2000).

## DISCUSSION

█ In order to find that a debt is nondischargeable under 11 U.S.C. § 523, courts generally require the traditional elements of common law fraud. A creditor must prove that: 1) the debtor made a false representation to deceive the creditor, 2) the creditor relied on the misrepresentation, 3) the reliance was justified, and 4) the creditor sustained a loss as a result of the misrepresentation. *See In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir.1998). The Bankruptcy Court found that all elements were met; therefore, the debt of $150,000.00 was not discharged. The Lightners appeal.

*I. Trial Court's Determination that the Lightners Made a False Representation*

The Lightners argue that the Bankruptcy Court erred in finding that the Lightners had represented to Lohn that Rainbows could be used to secure his loan as effectively as certificates of title and in so doing that they made false representations. The Lightners base this conclusion on two arguments. First, that the pre-June 1996 practice of Lohn holding open titles did not constitute legal security, and, therefore, any representation that the Rainbows could be used as effectively as the holding of open titles is absolutely true even if the Rainbows offered no security at all. Secondly, the Lightners argue that the post-June 1996 practice of tendering executed Rainbows pursuant to a contract that vested Lohn with the right to demand titles did constitute a legal assignment of the vehicle and did give Lohn a secured position.

*A. Rainbows Were as Effective as the Open Titles.*

For the first time, the Lightners argue that, because the open titles that Lohn

previously held did not confer any security interest, no misrepresentations were made concerning the effectiveness of the Rainbows. According to the Lightners, this being the case, the statement that the Rainbows were as effective as the titles was true, and thus not a misrepresentation.

█ This Court does not generally consider issues or theories that are being raised for the first time because the trial court did not have the opportunity to consider them. *See Etienne v. Inter–County Security Corp.,* 173 F.3d 1372, 1375 (11th Cir.1999). The issue presently being raised does not fit into the exceptions to this rule. *See Narey v. Dean,* 32 F.3d 1521, 1526–7 (11th Cir.1994) (recognized exceptions include a pure question of law and refusal to consider it would result in a miscarriage of justice, the appellant raises an objection to an order which he had no opportunity to raise at the trial court level, the interest of substantial justice is at stake, the proper resolution is beyond any doubt, or the new issue presents significant questions of general impact or of great public concern).

At no point in the bankruptcy proceedings did the Lightners argue that Lohn never held a security interest and that therefore the representation that the Rainbows were as effective was truthful. Mrs. Lightner did testify that Lohn's name did not appear on the titles, because she informed him that this would require him to pay sales tax, and that she did not view the transaction as a sale. Nonetheless, the fact that the Lightners did not argue that Lohn never held a security interest precludes this Court from considering the point now. *See Etienne,* 173 F.3d at 1375.

*B. Lohn was secured with the Rainbows in conjunction with the terms of the Contract.*

The Lightners are again raising for the first time an argument that Lohn did in

fact have a form of security interest based on the receipt of the Rainbows and the contractual language of their agreement. Not only is this the first time they are raising the issue, but also the Lightners expressed the opposite argument during the bankruptcy proceedings. Mr. Lightner testified that he knew that Rainbows did not create a security interest and were not the same as certificates of title. Additionally, Mrs. Lightner testified that she knew at the time she gave Lohn the Rainbows that they did not secure his loan and that she was using them for record keeping purposes. This Court will not allow the Lightners to argue, nor will this Court consider, legal issues that were not raised at the bankruptcy proceedings and which the Bankruptcy Court did not consider. *See id.*

*II. The Bankruptcy Court's Factual Determination that Lohn's Reliance was Justifiable.*

This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard of review. *See In re Patterson*, 967 F.2d 505, 508 (11th Cir.1992) (citing *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir.1992)). In determining whether there has been justifiable reliance, the court is to examine the particular qualities and characteristics of the plaintiff and the circumstances of the particular case. *See Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (citing the Restatement Second of Torts § 545A, Comment b). The Supreme Court has found that a person may have a justified reliance even if he may have been able to ascertain the falsity of the representation by undertaking an investigation. *id.* at 70, 116 S.Ct. 437.

This Court finds that there was sufficient evidence upon which the Bankruptcy Court could base its findings of fact. "On appeal, the reviewing court shall give 'due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'" *In re Moen*, 238 B.R. 785 (8th Cir. BAP 1999) (quoting Fed. R. Bankr.P. 8013). The Bankruptcy Court found that the Lightners had represented to Lohn that the Rainbows were effective as security. The Bankruptcy Court based its findings on the testimony of Lohn and the Lightners, the written instruments, and the relationship between the parties. The court acknowledged that the parties had developed a relationship of trust and confidence and that Lohn had no background in business finance. Additionally, the court found that it should not have been obvious to Lohn that the Rainbows did not convey the security interest that the agreement of June 1996 purported to convey.

The trier of fact has the duty and province to weigh the evidence and pass upon the credibility of the witnesses. *See Denmon v. Runyon*, 1994 WL 326071 (D.Kan. 1994) (citing, *U.S. v. Shelton*, 736 F.2d 1397 (10 Cir.1984)). Based upon a review of the evidence received by the Bankruptcy Court, this Court is not left with a definite and firm conviction that the Bankruptcy Court has committed a mistake. Instead, this Court finds the Bankruptcy Court's factual determination of Lohn's having justifiably relied on the Lightners' misrepresentation not to be clearly erroneous.

*III. The Bankruptcy Court's Finding that Lohn Sustained a Loss as a Result of the Misrepresentation.*

Proof that the aggrieved party's damage was proximately caused by the debtors misrepresentation is required by 11 U.S.C. § 523(a)(2)(A). *See In re Bilzerian*, 153 F.3d 1278 (11th Cir.1998). Proximate causation is comprised of two elements: causation in fact, and foreseeability. *See Anglin v. State of Florida*

*Department of Transportation,* 472 So.2d 784 (Fla. 1st DCA 1985). This Court finds that there was ample evidence for the Bankruptcy Court to determine that Lohn sustained damages as a proximate result of the Lightners' misrepresentation that the Rainbows were effective security.

The parties' original agreement operated in such a way that Lohn would write checks for the purchase of specific vehicles. He would then receive title to these vehicles. More importantly, when the specific vehicle was sold, Lohn would receive the money back, plus the appropriate interest. Lohn would then hand over the specific title to the Lightners. Under this system, because the Lightners were required to retrieve the titles Lohn was holding, Lohn knew when the vehicles were being sold and received payment accordingly. Under this system, Lohn was kept informed of the business and was compensated on a regular basis.

The Bankruptcy Court found that based on the Lightners' assurances of the effectiveness of Rainbows, Lohn agreed to modify their loan agreement. The June 1996 change in the parties' agreement affected Lohn's position considerably. While the agreement stated that the loan would be secured by "fully executed title assignment supplements listing Kenneth J. Lohn as the buyer of vehicles," the actual effect of the agreement was much different. Lohn exchanged the titles worth $150,000.00 for Rainbows. No longer was Lohn's loan based upon specific vehicles. Instead, Lohn held Rainbows, which the Lightners did not need in order to pass title to a new purchaser and which were viewed by Mrs. Lightner as merely a bookkeeping device. This being the case, Lohn no longer had to be informed of the sale of vehicles. In fact, he held Rainbows to numerous cars which had already been sold and for which he had received no payment.

This Court finds that there was sufficient evidence for the Bankruptcy Court to determine that, but for the misrepresentation of the Lightners, Lohn's damages would not have occurred. Additionally, this Court finds no reason to limit the Lightners' liability based on an unforeseeability of the damages argument. Accordingly, it is

**ORDERED** that the Final Judgment of the Bankruptcy Court be **affirmed**. The Clerk of Court is **directed** to enter judgment for the Appellee in accordance herewith.