In re Robert Joseph PUPELLO, Debtor.

Reginald T. Ford and Elsie N. Ford, Plaintiffs,

v.

Robert Joseph Pupello, Defendant.

Bankruptcy No. 01–875–3F7.
Adversary No. 01–138.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 4, 2002.

---

Robert Altman, for Plaintiffs.

Ronald Bergwerk, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court for a trial on March 6, 2002. At the conclusion of the trial the Court elected to take the matter under advisement. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Defendant was engaged in the business of buying and selling recreational vehicles in Flagler County, Florida. On or about June 9, 2000 Plaintiffs purchased a recreational vehicle (the "RV") from Defendant's dealership. The purchase price was $89,929.00. (Pl's Ex. 1.) As part of the transaction, Plaintiffs traded in a used recreational vehicle (the "trade-in") for which they received a $52,755.00 trade-in allowance. Plaintiffs owed $46,004.78 to

Bank of America on the trade-in. Plaintiffs obtained financing from John Deere Credit, Inc. ("John Deere"), Defendant's floor planner, in the amount of $80,942.72.[1] Defendant represented that the Bank of America loan would be paid off with the proceeds of the loan from John Deere. Plaintiff Reginald Ford testified that Plaintiffs relied on Defendant's promise to pay off the trade-in when they purchased the RV and signed over the title to the trade-in.

At the time of the transaction, Defendant was out of trust with John Deere. Defendant still had floor plan financing for new vehicles, which enabled him to obtain financing for the sale of new vehicles. However, because the dealership had lost its inventory financing for used vehicles, John Deere was not loaning any money to pay off trade-ins. Because the money loaned by John Deere went directly toward the reduction of the floor plan debt, the only way for Defendant to pay off the existing lien on the trade-in was through a sale of the vehicle. Despite his concession that all of the funds obtained from John Deere during the period surrounding the transaction with Plaintiffs went directly toward the reduction of the floor plan debt, Defendant testified that he intended to honor his dealership's promise to pay off Plaintiffs' trade-in.

In August 2000 the trade-in was sold for $25,000.00. By that time the dealership had lost all floor plan financing. The proceeds from the sale were used for normal operating expenses. Defendant testified that he believed his credit line would be reinstated if he reduced his debt to John Deere, thus enabling him to pay off the lien on the trade-in. The inventory financing was never reinstated.

Plaintiffs are still liable to Bank of America for the balance on the trade-in and have made monthly payments since June 2000. Plaintiffs agreed to reimburse Defendant for $3,800.00 in repairs needed on the trade-in. Defendant claims an offset in that amount.

### CONCLUSIONS OF LAW

Plaintiffs contend that the debt Defendant owes to them should be excepted from his discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

### § 523(a)(2)(A)

In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), Plaintiffs must prove that: (1) Defendant made a false representation with the purpose and intent of deceiving Plaintiffs; (2) Plaintiffs justifiably relied upon the representation; and (3) Plaintiffs sustained a loss as a result of the representation. *Lang v. Vickers (In re Vickers)*, 247 B.R. 530, 534 (Bankr.M.D.Fla.2000). Proof of fraud in cases involving unfulfilled promises requires a plaintiff to prove that when a defendant made promises he knew he could not fulfill them or had no intention of fulfilling them. *Bropson v. Thomas (In re Thomas)*, 217 B.R. 650, 653 (Bankr. M.D.Fla.1998). Plaintiffs allege that Defendant's representation that he would pay off the Bank of America loan with the money received from John Deere was a false representation made with the intent to deceive them in light of the fact that the money loaned by John Deere went directly toward the reduction of the floor plan debt. Defendant contends that he intended to honor his dealership's promise to pay off the trade-in and that his failure to do so with the funds from John Deere is nothing

---

**1.** This figure represents the sum of the purchase price of the RV ($89,929.00) and the sales tax ($2,280.44) reduced by 1) Plaintiffs' down payment ($5,000.00) and 2) the difference between the trade-in allowance and the balance owed on the trade-in ($6,750.22).

more than an unfulfilled promise. However, Defendant did not make an open-ended promise that he would pay off the Bank of America loan at some point in the future. He specifically promised to pay off the Bank of America loan with the proceeds of the loan from John Deere. In light of the fact that Defendant was out of trust with John Deere and thus required to use all of the funds obtained from John Deere to reduce his floor plan debt, Defendant knew he could not pay off the Bank of America loan with the proceeds of the loan from John Deere. The Court finds that Defendant's promise to pay off the existing lien on the trade-in with the proceeds of the loan from John Deere was a false representation made with the intent to deceive Plaintiffs. Plaintiffs' reliance on Defendant's representation was justifiable. Finally, as a result of Defendant's misrepresentation, Plaintiffs are required to pay off the loan to Bank of America. Because all of the elements of § 523(a)(2)(A) are satisfied, Defendant's debt to Plaintiffs will be excepted from Defendant's discharge pursuant to § 523(a)(2)(A).

### § 523(a)(4)

#### Fraud or defalcation while acting in a fiduciary capacity

■■■ 11 U.S.C. § 523(a)(4) excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity..." (West 2002). "Fiduciary" under § 523(a)(4) is a substantially narrower concept that "fiduciary" under state law. *Clark v. Allen (In re Allen)*, 206 B.R. 602, 607 (Bankr.M.D.Fla.1997). Federal courts have found "the traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust, and good faith—to be far too broad for bankruptcy purposes." *Liberty National Bank v. Wing (In re Wing)*, 96 B.R. 369, 374 (Bankr.M.D.Fla.1989) (citing *Chapman v.*

*Forsyth*, 2 How. 202, 11 L.Ed. 236 (1844)). The fiduciary relationship necessary for an exception to discharge requires the existence of an express or technical trust. *American Surety & Casualty Co. v. Hutchinson, (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). An express or technical trust exists when there is a segregated trust res, an identifiable trust beneficiary, and trust duties established by contract or statute. *Id.* Although the contract between Plaintiffs and Defendant conditioned the receipt of the trade-in upon Defendant's promise to pay off the lien, it did not create an express or technical trust. Because no express or technical trust was created, the fiduciary capacity required by § 523(a)(4) is not present.

#### Embezzlement

■■ Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Florida Outdoor Equip., Inc. v. Tomlinson (In re Tomlinson)*, 220 B.R. 134, 135 (Bankr.M.D.Fla.1998) (quoting *In re Kelley*, 84 B.R. 225, 231 (Bankr.M.D.Fla. 1988)). Although proof of a fiduciary relationship is not necessary in order to prevail on an embezzlement claim, the plaintiff must demonstrate that the defendant appropriated funds or property for his own benefit and that he did so with fraudulent intent or deceit. *Id.* citing *In re Rigsby*, 152 B.R. 776, 778 (Bankr.M.D.Fla.1993). Plaintiffs contend that Defendant's sale of the trade-in and his use of the sale proceeds for normal operating expenses instead of paying off the lien constitute fraudulent appropriation. In light of Defendant's testimony that he relied on John Deere's assurance that it would reinstate his floor plan lending and enable him to pay off the lien, the Court finds that Defendant did not possess fraudulent intent.

Accordingly, Defendant's actions do not constitute embezzlement.

### Larceny

Larceny is the fraudulent taking and carrying away the property of another with intent to convert such property to his use without the consent of another. *Ploetner–Christian v. Miceli (In re Miceli)*, 237 B.R. 510, 516 (Bankr. M.D.Fla.1999). Larceny, unlike embezzlement, requires that the original taking of the property be unlawful. *Werner v. Hofmann (In re Hofmann)*, 144 B.R. 459, 464 (Bankr.D.N.D.1992). Plaintiffs contend that Defendant "took" the trade-in and subsequently sold it without paying off the lien even though their consent to the sale was contingent upon payoff of the lien. Defendant did not fraudulently take and carry away the trade-in; Plaintiffs turned it over to Defendant as part of their purchase of the RV. Accordingly, there can be no finding of larceny.

### § 523(a)(6)

A party seeking to except a debt from discharge pursuant to § 523(a)(6) must prove that the defendant acted with actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A deliberate or intentional act that leads to injury is insufficient. *Id.* Plaintiffs contend that Defendant intended to injure them when he sold the trade-in for less than the amount of the lien and used the proceeds for normal operating expenses. Although the sale of the trade-in for less than the amount of the lien and the subsequent use of the proceeds were deliberate acts which ultimately injured Plaintiffs, there is no evidence that they were committed with the intent to cause injury.

### CONCLUSION

Defendant's promise to pay off the lien on Plaintiffs' trade-in with the proceeds of the loan from John Deere was a false representation with the intent to deceive Plaintiffs. Plaintiffs justifiably relied upon the representation and suffered a loss as a result. Accordingly, Defendant's debt to Plaintiffs will be excepted from Defendant's discharge pursuant to § 523(a)(2)(A).

Because the contract between Plaintiffs and Defendant did not create a technical trust, the fiduciary capacity required by § 523(a)(4) is not present. In light of Defendant's expectation that the dealership's floor plan financing would be reinstated, the sale of the trade-in and use of the sale proceeds for normal operating expenses did not constitute fraudulent appropriation. Additionally, Defendant's acceptance of the trade-in was not a fraudulent taking and carrying of Plaintiffs' property. Defendant's debt to Plaintiffs will not be excepted from Defendant's discharge pursuant to § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Finally, although the sale of the trade-in for less than the amount of the lien and the subsequent use of the proceeds were deliberate acts which ultimately injured Plaintiffs, there is no evidence that they were committed with the intent to cause injury. Defendant's debt to Plaintiffs will not be excepted from Defendant's discharge pursuant to § 523(a)(6).