In re Virginia K. WONG, Debtor.

**Citik Ka Wah Bank Limited New York Branch, Plaintiff,**

v.

**Virginia K. WONG, Defendant.**

**Bankruptcy No. 02–13854(BRL).**
**Adversary No. 02–8120.**

United States Bankruptcy Court,
S.D. New York.

March 25, 2003.

Rattet & Pasternak, LLP, by James Glucksman, Harrison, NY, for Debtor and Defendant.

Hollyer Brady Smith & Hines, LLP, by Orlee Goldfeld, Christopher Brady, New York City, for Plaintiff Citic Ka Wah Bank Limited, New York Branch.

## MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING DEBTOR'S MOTION TO DISMISS

BURTON R. LIFLAND, Bankruptcy Judge.

### Background [1]

CITIC Ka Wah Bank Limited New York Branch (the "Bank"), brings a five count complaint (the "Complaint"), against Virginia Wong (the "Debtor"), seeking a declaration that the Debtor's guaranty of certain debts allegedly owed to the Bank are nondischargeable pursuant to sections 523(a) and 727 of title 11 of the United States Code (the "Bankruptcy Code"). The Complaint indivisibly merges and attributes allegedly improper activities of the individual Debtor–Defendant with activities of two non-debtor parties,[2] in a fashion that gives new meaning to the concept of "fuzzy logic".[3] The Debtor moves to dismiss the Complaint.

---

**1.** All facts are taken from the Complaint and deemed to be true for purposes of determining the present motion.

**2.** See e.g. infra note 7 and accompanying text.

**3.** Pioneered in 1965 by Lofti Zadeh, fuzzy logic recognizes that something may be partially in one category while partially in another, contradictory category: it may be partially A and partially non-A. See Edward S. Adams

The Debtor is the secretary of China Enterprises, Inc. ("CEI"), a New York corporation owned and operated by her husband, neither of which are in a bankruptcy proceeding. The Bank lent money to CEI pursuant to a credit facility established in 1996. CEI defaulted on the loan and the Bank agreed to restructure the credit facility debt pursuant to a Modification of Credit Agreement (the "Modification Agreement"), dated September 7, 2001. The Modification Agreement provided for a revolving credit facility in the amount of $782,388 [4], a five-year term loan in the amount of $841,240 and an unrestructured balance of $220,847 (the credit facility, five-year term loan and unrestructured balance will be collectively referred to as the "Restructured Credit Facility"). The Restructured Credit Facility was secured by the following:

—a general security agreement with a first lien on all of CEI's assets;

—joint and several continuing guaranties of the Debtor and her husband, each dated September 7, 2001 and each limited to $1,844,477.56;

—a second mortgage on the Wongs' residence in the amount of $400,000; [5] and

—an assignment to the Bank of all deposits or accounts of CEI evidenced by a Cash Collateral and Pledge Agreement.

CEI then defaulted under the Restructured Credit Facility. After sending several default letters, the Bank drew down on the Escrowed Funds and reduced the Restructured Credit Facility debt accordingly. In May 2002, the Bank commenced an action against CEI, the Debtor and her husband in the United States District Court, Southern District of New York, entitled *CITIC Ka Wah Bank Ltd. New York Branch v. China Enters., Inc., et al.* (the "District Court Action"), 02 Civ. 3844(DAB)(GWG), asserting claims in connection with CEI's default under the Modification Agreement and the Restructured Credit Facility. After the defendants failed to answer or respond to its complaint, the Bank moved for a default judgment. While that motion was pending, the Debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the Bank filed its Complaint commencing this adversary proceeding. The Debtor now seeks to dismiss the Complaint on grounds that it fails to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules").

### Discussion

Rule 12(b)(6), which is made applicable to this proceeding by rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), enables a defendant to move to dismiss a complaint on the ground that it fails to state a claim upon which relief may be granted. Fed.R. Civ.P. 12(b)(6); Fed.R. Bankr.P. 7012(b). "In reviewing a motion to dismiss, a court merely assesses the legal feasibility of the complaint, and does not weigh the evidence that may be offered at trial." *In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664 (Bankr.S.D.N.Y.2000). A motion to dismiss must be denied unless it "appears

---

& Daniel A. Farber, *Beyond the Formalism Debate: Expert Reasoning, Fuzzy Logic, and Complex Statutes*, 52 VAND. L.REV. 1243, 1245–46 (1999).

**4.** The revolving credit facility is evidenced by an Amended and Restated Revolving Note which matured February 28, 2002.

**5.** In January 2002, the Debtor and her husband sold their residential property and the Bank consented to the sale on the condition that $400,000 of the sale proceeds (the "Escrowed Funds"), be placed into an escrow account subject to the Bank's mortgage interest, pending replacement with a mortgage on a new property.

beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pled factual allegations must be read by the court as true, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir.1995); *Shields v. Citytrust Bancorp Inc. (In re Citytrust Bancorp, Inc.)*, 25 F.3d 1124, 1127 (2d Cir.1994), and construed in a light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. at 57, 78 S.Ct. 99; *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). The issue is not whether the plaintiff ultimately will prevail on the merits, but whether she is entitled to offer evidence to support her claims. *In re Adler, Coleman Clearing Corp.*, 218 B.R. 689, 696 (Bankr.S.D.N.Y.1998) *citing Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683.

## A. The First Claim for Relief

The Complaint asserts five claims for relief; [6] four based on fraud and one based on willful and malicious injury. The Bank's first claim for relief seeks a declaration that the Debtor's guaranty of CEI's debt to the Bank is nondischargeable pursuant to section 523(a)(2) of the Bankruptcy Code, based on misrepresentations made *either by the Debtor or by her husband*, without specific attribution to ei-

ther [7], regarding the financial condition of CEI. The Debtor, however, asserts that because the misrepresentations relied on in the Complaint refer to the Debtor's financial condition, they are specifically excluded from subsection 523(a)(2)(A). The Debtor further asserts that the Complaint fails to state a claim under subsection 523(a)(2)(B) because it does not plead that (1) the fraudulent statements were made in a writing and (2) the Bank reasonably relied on the statements.

Section 523(a) specifies which of the debtor's debts are excepted from discharge. Section 523(a)(2)(A) provides that an individual debtor will not be discharged from any debt for an extension, renewal or refinancing of credit to the extent obtained by (1) false pretenses, (2) a false representation, or (3) actual fraud—*other than a statement respecting the debtor's or an insider's financial condition.* 11 U.S.C. § 523(a)(2)(A) (emphasis added). Alternatively, subsection 523(a)(2)(B) of the Bankruptcy Code provides that a debt is nondischargeable if it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing,

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, proper-

---

**6.** Curiously, the Complaint asserts a first, second, third, fourth and sixth claim for relief. No fifth claim for relief is contained in the Complaint, although judgment for the fifth count is specifically requested in paragraph 73.

**7.** Specifically, the Complaint in tarbrush fashion alleges, as against the Debtor, that:

(1) "Allan *and/or* Virginia Wong hired temporary workers ..." Complaint at ¶ 34.;

(2) "Virginia and *Allan Wong* made fraudulent misrepresentations concerning the warehouse", Complaint at ¶ 39, but only "*Allan Wong* restated and reaffirmed this representation in a letter to the Bank." Complaint at 41.; and

(3) "[D]uring a telephone call with a Bank officer ... *Allan Wong* represented to the Bank that *he and CEI* were 'current' (i.e., not in default) in their credit facility with the Bank of Communications." Complaint at ¶ 48.

ty, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). Discharge exceptions are strictly construed in favor of dischargeability. *See In re Peters*, 133 B.R. 291 (S.D.N.Y.1991), *aff'd* 964 F.2d 166 (2d Cir.1992). Moreover, sections 523(a)(2)(A) and 523(a)(2)(B) are mutually exclusive. *See Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr.S.D.N.Y. 1999). While subsection (a)(2)(A) specifically provides that it is inapplicable to statements regarding the debtor's financial condition, subsection (a)(2)(B) covers only statements regarding the debtor's financial condition. Moreover, only subsection (a)(2)(B) requires that the misstatement be in writing. Thus, if the misrepresentation involves a statement regarding the debtor's or an insider's financial condition, it must be in writing. *See In re Alicea*, 230 B.R. at 500.

The first allegation asserts that in order to induce the Bank to enter into the Restructured Credit Facility with CEI, the Debtor "made a false representation concerning her financial condition in that the property located in North Carolina was not owned by her, her husband Allan Wong, or an entity owned by them." Complaint at ¶ 57. The Complaint alleges that it subsequently learned that the Debtor actually did own the property which could have been listed as collateral. Accordingly, the Complaint asserts that CEI's debt (and the Debtor's consequent debt to the Bank stemming from her guaranty of CEI's debt) was incurred as a result of the Debtor's false statement regarding CEI's financial condition. The Complaint specifically pleads that this was a "financial condition" statement, thereby limiting itself to section (a)(2)(B).

■ Nonetheless, under sections 523(a)(2)(A) and (a)(2)(B), a creditor must prove that the debt was *obtained by* false pretenses, a false representation or actual fraud. (Senate Report No. 95–989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–5865) (emphasis added). Once it is established that specific money or property has been obtained by fraud, the debt arising therefrom is excepted from discharge. *See Cohen v. de la Cruz*, 523 U.S. 213, 214, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The majority of cases asserting nondischargeability under section 523(a)(2) involve debtors who obtain a loan by falsely *claiming* ownership of property so that they can obtain loans by listing collateral. Here, the Complaint alleges that *denying* an ownership interest in collateral somehow enabled the Debtor to obtain refinancing. The Bank has cited no caselaw in support of its position. Moreover, the Bank agreed to restructure the debt in spite of the fact that the Debtor represented that she did not own the property. If the Bank was dissatisfied with the quantum of collateral offered, it would have refused the restructuring. Furthermore, even if the Debtor admitted that she owned the property, she certainly could have opted not to offer it as collateral. I do not see, and the Complaint does not explain, how denying ownership of collateral could have *helped* CEI obtain restructuring of a debt on which it already had defaulted. The Bank's argument is illogical and fails to state a claim that the alleged statement enabled CEI to obtain the refinancing.

■ Additionally, section 523(a)(2)(B) requires a material misstatement. *See* 11 U.S.C. § 523(a)(2)(B)(i) ("use of a statement in writing—that is materially false"). Even if the Debtor falsely denied owning property which could have been listed as

collateral, this denial was not material to the Bank's decision to extend the refinancing to CEI. Material misrepresentations under section 523(a)(2)(B) are "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." *In re Candland,* 90 F.3d 1466, 1470 (9th Cir.1996). "A recurring guidepost used by courts [for determining material falsity] has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition." *In re Furio,* 77 F.3d 622, 625 (2d Cir.1996) (*citing In re Bogstad,* 779 F.2d 370, 375 (7th Cir.1985)). "The information must not only be substantially inaccurate, but it must also be information which would have affected the creditor's decision making process." *Id. citing Hudson Valley Water Resources, Inc. v. Boice (In re Boice),* 149 B.R. 40, 45 (Bankr.S.D.N.Y. 1992). Because the Bank refinanced the debt despite the lack of additional collateral, the Debtor's false statement denying ownership of property did not affect the Bank's decision to refinance CEI's debt.

 Finally, the Bank did not justifiably rely on this statement. To prevail on a complaint to except a debt from discharge under section 523(a)(2)(A) or (a)(2)(B), the creditor must not only prove that the debt was obtained by a false statement, but also that the creditor reasonably relied on the misstatement.[8] *See also, Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (creditor must prove justifiable reliance under section 523(a)(2)(A)); *Lightner v. Lohn,* 274 B.R. 545 (M.D.Fl.2002) (courts must find that creditor's reliance was justified for section 523(a)(2)(A) nondischargeability determination); *Waterman v. Haumaier,* 222 B.R. 40, 41 (S.D.N.Y. 1998) (justifiable reliance is an essential

element of section 523(a)(2)(A)). Justifiable reliance is an intermediate level of reliance; less than reasonable but more than mere reliance in fact. *See Field v. Mans,* 516 U.S. at 73–75, 116 S.Ct. 437. In determining whether there has been justifiable reliance, the court is to examine the particular qualities and characteristics of the plaintiff and the circumstances of the particular case. *See Lightner v. Lohn,* 274 B.R. at 550. In evaluating whether a creditor's reliance was reasonable, the following factors should be considered:

(1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices);

(2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by the debtor); and

(3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*See In re Cohn,* 54 F.3d 1108, 1117 (3d Cir.1995).

 Generally, however, creditors are not required to conduct an investigation outside of ordinary business practices before entering into agreements with prospective debtors and courts should not use the reasonable reliance requirement to

---

**8.** 11 U.S.C. § 523(a)(2)(B)(iii) ("on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied").

second guess a creditor's decision to lend money. *See In re Corrigan* 2003 WL 261919, *12 (Bankr.N.D.Ill.2003) *citing In re Garman*, 643 F.2d 1252, 1257–58 (7th Cir.1980). Nevertheless, the "requirement of 'reasonable reliance' does not mean that a creditor can bury its head in the sand like an ostrich and ignore facts that are readily available to it." *In re Bogstad*, 779 F.2d at 373. By entering into the Restructuring Agreement with the collateral package offered, the Bank expressed its satisfaction with the protective liens given. Furthermore, denying ownership of the property did not help CEI *obtain* the refinancing. The act of denying ownership of the property was immaterial to the Bank's decision to refinance the debt. Thus, the Bank has not stated a claim whereby it can establish that it reasonably relied on this misrepresentation. Accordingly, the statement is not actionable under section 523(a)(2).

▮ The second alleged misrepresentation involves a telephone call with a Bank officer, on or about December 20, 2000, in which the *Debtor's husband* represented to the Bank that *he and CEI* were not in default under the terms of a separate credit facility with the Bank of Communications.[9] The Complaint does not allege that the Debtor made these misrepresentations. Moreover, because the Complaint only pleads that these statements were oral (during a telephone conversation), section 523(a)(2)(B) does not apply because the writing requirement was not pleaded. Accordingly, the alternative would be section 523(a)(2)(A). However, section 523(a)(2)(A) is unavailable because even if the Bank could somehow, through some form of legerdemain

impute the Debtor's husband's statement to the Debtor, it remains a statement concerning CEI's "financial condition" for purposes of section 523(a)(2)(A).

## "Financial Condition" Statements

▮ Discharge provisions must be strictly construed against the creditor and liberally construed in favor of the debtor. *See Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997). In order to prevail on a nondischargeability action under sections 523(a)(2)(A) or (B), the creditor must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that preponderance of the evidence standard, rather than clear and convincing standard, applies to all exceptions to discharge). The term "financial condition," for purposes of section 523(a)(2), is not defined in the Bankruptcy Code and has therefore become the subject of two differing theories of interpretation: the strict interpretation versus the broad interpretation.

Under what has come to be referenced as the strict interpretation, statements relating to a debtor's financial condition are limited to those that involve the debtor's overall financial responsibility, net worth or ability to generate assets, and do not include mere statements regarding a single asset or liability. *See In re Alicea*, 230 B.R. at 502. A strict interpretation of a "financial statement" includes "balance sheets, income statements, statements of changes in financial position, or income and debt statements in the case of an individual wage earner, that reflect a person's ability to pay an additional debt."

9. Significantly, the Complaint does not allege that CEI was actually in default on December 20, 2000. Complaint at ¶ 48. That default, if it existed, only came to light *more than two*

*months later*, upon the initiation of a lawsuit by the Bank of Communications on February 27, 2002. *See* Complaint at ¶ 48.

*Old Kent Bank–Chicago v. Price (In re Price)*, 123 B.R. 42, 45 (Bankr.N.D.Ill. 1991). *See also, In re Chivers,* 275 B.R. 606 (Bankr.D.Utah 2002); *Kloven v. Ramsey,* 1993 WL 181309 at *2 (D.Minn. Apr. 22, 1993) (a statement relating to financial condition is one concerning "overall financial health, net worth, or ability to generate income, as opposed to a statement concerning the status or quality of a single asset or liability"); *D. Nagin Mfg. Co. v. Pollina (In re Pollina),* 31 B.R. 975, 978 (D.N.J.1983) ("financial statement" may apply to any indication of "net worth," including balance sheets and profit and loss statements in the business context, and statements of weekly wages and existing debts in the individual context).

The broad view, on the other hand, interprets "financial statements" to include not only those statements accepted by a strict interpretation of the term, but also "statements concerning the condition or quality of a single asset or liability impacting on the debtor's financial picture." *In re Priestley,* 201 B.R. at 882. *See also, Engler v. Van Steinburg (In re Van Steinburg),* 744 F.2d 1060, 1060–61 (4th Cir. 1984) (representation that debtor owned property free and clear of liens); *Hudson Valley Water Resources, Inc. v. Boice (In re Boice),* 149 B.R. 40, 46 (Bankr.S.D.N.Y. 1992) (statement concerning the ownership of a home); *Connecticut Nat'l Bank v. Panaia (In re Panaia),* 61 B.R. 959, 960–61 (Bankr.D.Mass.1986) (statement concerning the amount of indebtedness owed to a bank).

Strictly construing discharge provisions in favor of dischargeability, I find that the narrow approach is the preferable interpretation. Similarly, the *Alicea* court reasoned that "the strict view promotes better bankruptcy policy, [because] [v]irtually any statement concerning an asset or liability arguably relates to financial condition."

*Id.* at 502. If interpreted too broadly, the definition will include virtually every statement by a debtor that accompanies an extension of credit and thereby permit many dishonest debtors to avoid the consequences of oral fraud. *See id.* "The better rule decides cases on their merits, rather than upon the construction of an ambiguous, statutory phrase that grants a fresh start without regard to the honesty of the debtor." *Id.*

Narrowly construing the term "financial condition" to include only statements with respect to an entity's net worth, ability to generate assets or overall financial responsibility, I find that the statement that CEI was current with its existing third-party credit facility goes directly toward financial responsibility: whether or not CEI was paying debts as they become due. Accordingly, as stated above, the misrepresentation regarding CEI's status with another credit facility is not actionable under subsection 523(a)(2)(A). Statements respecting a debtor's or an insider's financial condition are specifically carved out of subsection 523(a)(2)(A). *See* 11 U.S.C. § 523(a)(2)(A). Moreover, the misrepresentation is not actionable under subsection 523(a)(2)(B) because it was merely an oral statement, not evidenced by a writing. For misrepresentations to be actionable under subsection 523(a)(2)(B), the statements must be, *inter alia,* in writing. *See* 11 U.S.C. § 523(a)(2)(B).

The final misstatement alleged in the first claim for relief asserts that "Virginia Wong and her husband made oral statements that were materially false concerning the financial condition of CEI." Complaint at ¶ 58. Oral misstatements concerning a debtor's or an insider's financial condition are not actionable under section 523(a)(2) of the Bankruptcy Code. *See In re Alicea,* 230 B.R. at 500. Never-

theless, the Bank asserts that CEI hired temporary workers on a day that the Bank was visiting CEI's office to assess its business operations, to create the false impression that CEI was prospering. *See id.* Because the Complaint specifically pleads that the false statements (the hiring of temporary workers for the purpose of deceiving the Bank) concerned the Debtor's financial condition, the Complaint fails to state a claim under section 523(a)(2)(A). Moreover, even if the Complaint did not specifically plead that the hiring of additional workers was a statement regarding a financial condition, I find that to the extent hiring temporary workers were to constitute a statement at all, it would be a financial statement for purposes of section 523(a)(2). Consistent with the strict definition of statements regarding a financial condition, the Complaint alleges that CEI hired extra workers to create, for the benefit of the Bank, a positive impression of CEI's overall financial picture—its ability to generate assets, pay workers and the necessity of hiring such workers to sustain business operations. Alternatively, because the Complaint merely asserts that the false statements were oral and fails to plead that they were evidenced by a writing, section 523(a)(2)(B) is equally inapplicable.

Because the three allegations in the first claim for relief fail to state a claim under either section 523(a)(2)(A) or section 523(a)(2)(B), the Debtor's motion to dismiss the Complaint with respect to the first claim for relief is granted.

### B. The Second Claim for Relief

The Bank's second claim for relief asserts that the Debtor's guaranty of the Bank Debt is nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code. Specifically, the Complaint asserts that the Debtor diverted CEI's inventory by having CEI customers issue checks in payment for goods directly to the Debtor, her husband, or someone in Canada in breach of her fiduciary duty owed to the Bank. The Debtor seeks to dismiss this claim on grounds that the Bank failed to plead that the Debtor owed a fiduciary duty to the Bank and because the Complaint failed to plead fraud with particularity.

Section 523(a)(4) provides that a discharge under section 727 of this title does not discharge an individual debtor from any debt for (1) fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement or (3) larceny. 11 U.S.C. § 523(a)(4). The definition of "fiduciary" for purposes of section 523(a)(4) is controlled by federal common law and is narrower than under general common law. *See In re Harrell,* 173 F.3d 850, 1999 WL 150278 (4th Cir.1999). Under this section, a fiduciary is generally limited to instances involving express or technical trusts. *See id.; Barrett v. Clarendon Nat'l Ins. Co.,* 1999 WL 184117 (N.D.Tex.1999); *Bennett v. Wright (In re Wright),* 282 B.R. 510, 515 (Bankr.M.D.Ga.2002); *but see Cooper v. Zois,* 269 B.R. 89 (Bankr.S.D.N.Y.1999) *aff'd* 268 B.R. 890, 895 (S.D.N.Y.2001) ("An attorney-client relationship forms a fiduciary bond under Section 523(a)(4).") *citing The Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 168 (2d Cir.1999). For purposes of section 523(a)(4), a debtor's fiduciary obligations must have been in existence prior to, rather than by virtue of, any claimed misappropriation of funds: [c]onstructive trusts or trusts *ex malificio* do not satisfy the requirements of section 523(a)(4). *See In re Harrell,* 173 F.3d 850, 1999 WL 150278; *In re Wright,* 282 B.R. at 510. Because the Complaint fails to plead the existence of an express or technical trust or any other express fiduciary relationship that

existed prior to the misappropriation, the Complaint fails to adequately plead a fiduciary relationship for purposes of section 523(a)(4).

 However, section 523(a)(4) of the Bankruptcy Code also prohibits a discharge of debts incurred as a result of the debtor's embezzlement. *See Matter of Weber*, 892 F.2d 534, 538–539 (7th Cir. 1989). Proof of a fiduciary relationship is not necessary in order to prevail on an embezzlement claim. *See In re Pupello*, 281 B.R. 763 (Bankr.M.D.Fla.2002); *In re Scheller*, 265 B.R. 39 (Bankr.S.D.N.Y. 2001). Bankruptcy courts look to federal common law to define embezzlement as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895), *quoted in In re Bevilacqua*, 53 B.R. 331, 333 (Bankr.S.D.N.Y.1985). The elements of a claim based on embezzlement include:

(1) property owned by another is rightfully in the possession of debtor;

(2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and

(3) circumstances indicating fraudulent intent.

*See In re Scheller*, 265 B.R. at 39. *See also, In re Dakota*, 284 B.R. 711, 721 (Bankr.N.D.Cal.2002); *Matter of Weber*, 892 F.2d at 539; *In re Tilley*, 286 B.R. 782 (Bankr.D.Colo.2002).

 The Complaint asserts that the Debtor misappropriated CEI's funds for her own benefit. *See* Complaint at ¶ 63 ("Defendant, ... with intent to defraud the Bank as a secured creditor, ... diverted CEI's inventory of goods by having customers of CEI issue checks in payment

for those goods directly to Defendant, her husband, or an entity or person in Canada."). The Debtor claims, however, that the Bank's second claim for relief must be dismissed because the Bank has failed to plead the third element, circumstances indicating fraudulent intent, with the specificity required by Rule 9(b), as incorporated by Bankruptcy Rule 7009.

In order to plead embezzlement, the Bank must allege that the Debtor misappropriated funds for her own purpose and that she did so with fraudulent intent. Rule 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. However, malice, intent, knowledge or other condition of mind of a person may be averted generally. Fed.R.Civ.P. 9(b). In determining whether fraud has been pled with sufficient particularity, a Court must read the complaint generously, and draw all inferences in favor of the plaintiff. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The purpose of Rule 9(b) is to allow a defendant to meaningfully respond to a complaint. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). To satisfy the first part of Rule 9(b), the pleading must set forth the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51–52 (2d Cir.1995); *American Exp. Travel Related Services Co., Inc. v. Henein (In re Henein)*, 257 B.R. 702, 706 (E.D.N.Y.2001). Fraudulent intent, on the other hand, for purposes of section 523(a)(4), may be inferred from circumstantial evidence. *See In re Wright*, 282 B.R. 510, 516 (Bankr.M.D.Ga.2002). Because direct evidence of intent is rarely available, courts may infer such intent from the circumstances of the case. *See Emergency One, Inc. v. Jones (In re*

*Jones),* 176 B.R. 629, 635 (Bankr.M.D.Fl. 1995). Still, the more relaxed requirement of the second part of Rule 9(b) which provides that state of mind can be averred generally "must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations." *In re Citytrust Bancorp., Inc.,* 25 F.3d at 1128. In determining whether a debtor acted with fraudulent intent, the court must examine the debtor's acts and the context in which they occurred. *See Marriott Int'l, Inc. Employee Profit Sharing, Savings and Retirement Plan and Trust v. Suarez (In re Suarez),* 1996 WL 480809 *3 (E.D.N.Y.1996). The Complaint, however, states a bald allegation and has not asserted any circumstantial evidence from which I can infer fraudulent intent. The Complaint makes a conclusory statement that the Defendant diverted CEI's inventory by having CEI customers issue checks in payment for CEI goods directly to the Defendant, her husband, or some unknown entity in Canada. The Complaint fails to provide any context in which the alleged acts occurred. It does not give a rough estimation of the duration of the alleged diversions, much less an idea of when the diversions took place or an approximation of the extent of the diversions. The allegations in the Complaint hardly put the Debtor on sufficient notice to respond to the Complaint or provide a context for the Court to infer fraudulent intent. For these reasons, the Complaint has failed to plead the Debtor's fraudulent intent with the specificity required by the second part of Rule 9(b). The second claim for relief is therefore dismissed.

## C. Third Claim for Relief

■ The Bank's third claim for relief asserts that the Debtor's guarantee is nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code on similar grounds; that the Debtor wrongfully diverted assets of CEI to herself, her husband or an entity in Canada. Section 523(a)(6) provides that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). Section 523(a)(6) requires proof of: (1) an intentional action by the defendant; (2) done with the intent to harm; (3) which causes injury (economic or physical) to the plaintiff; and (4) the injury is the proximate result of the action by the defendant. *See In re Tilley,* 286 B.R. at 790.

■ Although conversion constitutes an injury to property for purposes of section 523(a)(6), *see Haemonetics Corp. v. Dupre (In re Dupre),* 238 B.R. 224, 229 (D.Mass.1999), section 523(a)(6) requires more than an intentional act leading to injury. *See Kawaauhau v. Geiger (In re Geiger),* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Supreme Court held in *Geiger* that "willful in (a)(6) modifies injury and not merely a deliberate or intentional act that leads to injury is required." *Id.* Under *Geiger,* a complaint must allege that the debtor not only intended to exercise control over the property of another, but to have done so intending the consequent injury to the plaintiff's interest in the property. *See In re Dupre,* 238 B.R. at 230. Justice Ginsburg noted in *Geiger* that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself." *In re Geiger,* 523 U.S. at 61, 118 S.Ct. 974. An act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result. *See Navistar Financial*

*Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir.1996); *In re Wright*, 282 B.R. at 518. For an act to be "malicious," the debtor must have acted "without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d at 87; *In re Alicea*, 230 B.R. at 508. Malice may be constructive or implied from the acts and conduct of the debtor in the context of the surrounding circumstances. *See In re Stelluti*, 94 F.3d at 87, 88.

The Complaint asserts that the Debtor diverted CEI's funds so as to prevent them from becoming subject to recovery by the Bank. It is well settled that if a debtor knows that her spouse or significant other is embezzling funds and then participates in the use or dissipation of them for a purpose other than the intent of the original entrustment, the debtor may be subject to a nondischargeability finding under section 523(a)(6). *See In re Stelluti*, 94 F.3d. at 88; *In re Tilley*, 286 B.R. at 790; *In re Dupre*, 238 B.R. at 229. The Complaint alleges that the Debtor wrongfully transferred CEI assets in which the Bank had a security interest, out of the country, thereby depriving the Bank of assets which it may otherwise have been entitled to recover against. It is unnecessary to assert in the complaint that the Debtor acted with personal hatred, spite, or ill-will. *See In re Stelluti*, 94 F.3d at 87; *In re Alicea*, 230 B.R. at 508. It is sufficient to assert that the Debtor removed the property to injure the Bank, i.e., for the purpose of preventing the Bank from reaching its collateral. The Complaint has pleaded a set of facts sufficient proceed to trial.

Indeed, the Second Circuit reached the same conclusion under similar facts in *In re Stelluti*. In *Stelluti*, the Second Circuit affirmed the district court's finding that a debtor-guarantor's debt was nondischargeable pursuant to section 523(a)(6) when the debtor helped her husband divert funds from a corporation owned and operated by the debtor's husband. *In re Stelluti*, 94 F.3d at 88. Particularly, the court concluded that the debtor's conduct was willful and malicious for purposes of section 523(a)(6) when the debtor (1) assisted her husband in transferring assets out of her husband's corporation [10] and deposited them into a personal account, (2) was aware that the corporation owed a debt to another entity because (3) she personally guaranteed that debt, and (4) the debtor stated no legitimate justifications for her actions. *See id.* The facts alleged in the instant Complaint are strikingly similar. The Debtor urges, however, that *Stelluti* has been narrowed by *Geiger* to the extent that *Stelluti* is no longer applicable to this case. However, *Geiger* merely held that debts from reckless or negligently inflicted injuries do not fall within the compass of section 523(a)(6). *See In re Geiger*, 523 U.S. at 63, 118 S.Ct. 974. In *Geiger*, the Court concluded that a judgment based on a debtor-doctor's malpractice, stemming from recklessly or negligently inflicted injuries, was not subject to section 523(a)(6) because the doctor did not intend to harm his patient.[11] In *Stelluti*, the court found that under the circumstances in which the debtor diverted the funds of the company,

10. Although not an officer of her husband's corporation, the Debtor was employed by the corporation to perform bookkeeping and other clerical tasks. *See id.* at 85.

11. In *Geiger*, the debtor-doctor attempting to cut costs for his patient, treated the patient's infected foot with oral penicillin rather than intravenously administered penicillin, even though the latter course of treatment would have been more effective. The patient's foot was subsequently amputated. *See id.* at 59, 118 S.Ct. 974.

"there was no other purpose for [her] conduct except to harm the interests of [the creditor]." *Id.* at 88. Here, the Complaint asserts that the Debtor intended to harm the Bank. The Complaint asserts that the Debtor removed the funds to prevent the Bank from collecting them. Accordingly, I find that the Bank's third claim for relief has adequately pleaded a set of facts alleging embezzlement under section 523(a)(6) to survive the Debtor's motion to dismiss.

### D. Fourth and Sixth Claims for Relief

■ The fourth and sixth claims for relief contrive to establish nondischargeability through an innovative combination of sections 727(a)(2) and 727(a)(7), but ultimately fail to state a claim under either section. The fourth and sixth claims for relief assert that the Bank Debt is nondischargeable because the Debtor diverted property of CEI within one year of the petition date, with intent to hinder, delay or defraud the Bank pursuant to section 727(a)(2) and 727(a)(7) of the Bankruptcy Code.

Section 727(a)(7) denies discharge if a debtor (1) with intent to hinder, delay or defraud a creditor (2) transfers, removes, destroys, mutilates, or conceals, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) *the property of the debtor* (4) within one year before the date of the filing of the petition, *in connection with another case under this title.* 11 U.S.C. § 727(a)(7) (emphasis added). The Complaint, on the other hand, alleges that the Debtor (or her husband) transferred *CEI's property,* and does not even mention a related bankruptcy case. Neither CEI nor the Debtor's husband are in bankruptcy proceedings. The sixth claim for relief therefore fails to state a claim under section 727(a)(7) because it fails to even plead the terms of the statute.

■ The Bank's section 727(a)(2) assertion is similarly groundless. Section 727(a)(2) provides that the court shall deny discharge if the debtor, (1) with intent to hinder, delay or defraud a creditor (2) has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) *the property of the debtor* (4) within one year before the date of the filing of the petition. 11 U.S.C. § 727(a)(2) (emphasis added). Again, the Complaint fails to state a claim because it does not allege that the Debtor transferred *her* property (or the property of the estate if the transfer occurred post-petition). Instead, the Complaint alleges that the Debtor (or her husband) diverted *CEI's funds.* While this may have been actionable under section 727(a)(7) if CEI were also in bankruptcy, it is not actionable under section 727(a)(2). "Section 727(a)(2) requires that the property in question be property of the Debtor or property of the estate, not merely assets of a corporation where the Debtor is a shareholder of that corporation." *Rothman v. Beeber (In re Beeber),* 239 B.R. 13, 26 (Bankr.E.D.N.Y.1999). "Although the debtor may have a derivative interest in his corporation's assets, the term 'property of the debtor' as expressed in 11 U.S.C. § 727(a)(2)(A) has reference to property in which the debtor has a direct proprietary interest." *Id.* Causing a corporation to transfer assets does not support a denial of discharge pursuant to section 727(a)(2). *See id.* There must be an actual transfer of property belonging to the debtor which thereby reduces assets that otherwise would have been available for distribution to general creditors. *See id.* Accounts receivable are corporate assets: not assets of the Debtor. *See id.* For these rea-

sons[12], the motion to dismiss is granted with respect to the fourth and sixth claims for relief.

### Conclusion

To the extent that this prolix Complaint was forged with the hope that something will stick, it succeeded—but just barely. Therefore, for the reasons stated above, the Debtor's motion to dismiss is granted with respect to the first, second, fourth and sixth claims for relief.[13] The motion is denied with respect to the third claim for relief.

IT IS SO ORDERED.

---

12. In addition, "intent to defraud" is another element that must be pleaded under section 727(a)(2). As stated above, a finding of actual intent may be based on circumstantial evidence or on inferences drawn from a course of conduct. *See In re Suarez,* 1996 WL 480809 *3. The Complaint fails to allege *any* circumstantial evidence or course of conduct from which the Court may infer fraudulent intent.

13. Dismissal is appropriate as to the fifth claim for relief as well, wherever and whenever it is found.